Loverta **ALEXANDER** et al., **Plaintiffs**,

v.

Edward T. **WEAVER** et al., **Defendants.**

Georgia **TOWNSEND** et al., **Plaintiffs**,

v.

Edward T. **WEAVER** et al., **Defendants.**

No. 68 C 2134.

United States District Court,
N. D. Illinois, E. D.

June 30, 1972.

Michael F. Lefkow, Community Legal Counsel, Melvin B. Goldberg, Cook County Legal Assistance Foundation, Chicago, Ill., for plaintiffs.

William J. Scott, Atty. Gen. of Illinois, Donald S. Carnow, Asst. Atty. Gen., Chicago, Ill., for defendants.

## MEMORANDUM OPINION

MAROVITZ, District Judge.

*Motion For Injunctive And Other Relief Pursuant To Paragraph 8 Of January 21, 1972 Order*

### I.

The current phase of this suit arises out of a class action brought by plaintiffs in 1968 challenging the validity of Art. IV, § 4–1.1 of the Illinois Public Aid Code, Ill.Rev.Stat. Ch. 23, § 4–1.1 (1967) and Illinois Public Aid Regulation 150 issued pursuant thereto. Section 4–1.1 provided that needy children who are deprived of parental support and are between eighteen and twenty-one years of age and in regular attendance in *high school, vocational school,* or *technical training school* are eligible to receive aid to families with dependent children (AFDC) benefits. Plaintiffs alleged that Section 4–1.1 was inconsistent with Section 406(a) (2) of the Social Security Act, 42 U.S.C. § 606(a) (2) in its provision of AFDC benefits for children between 18 and 21 attending high, vocational and technical schools while excluding those in the same age group attending college and thus was void under the Supremacy clause. Plaintiffs also asserted that their equal protection rights were being violated.

A motion to convene a three-judge Court was granted, Alexander et al. v. Swank et al., 314 F.Supp. 1078 (N.D.Ill. 1969), and that Court found that Section 4–1.1 did not conflict with section 406(a) of the Social Security Act since the latter section did not require the states to incorporate the Federal definition of "dependent children" in their own programs and that furthermore the legislative history of Section 406(a) (2) indicates that Congress granted states considerable flexibility in extending or excluding AFDC benefits to children over eighteen years of age. The three-judge Court also held that Section 4–1.1 did not violate the equal protection clause. Alexander v. Swank, 314 F. Supp. 1082 (N.D.Ill.1970).

Plaintiffs appealed to the Supreme Court of the United States and the Supreme Court reversed the three-judge Court in Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (December 20, 1971). The Supreme Court held, citing its decision in King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968) "that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under Federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy clause." 92 S.Ct. at 505. The Court went on to find that no congressional authorization existed for the exclusion of otherwise eligible 18–20 year old needy dependent children who attended college rather than a vocational or high school, that the legislative history indicates that no such exclusion was intended and that the Illinois classification was therefore invalid as conflicting with the Social Security Act.

Pursuant to the Supreme Court's decision the three-judge Court ordered that the invalid provision be eliminated from the Illinois Public Aid code and that other appropriate action be taken to conform with the Supreme Court's decision.

The three-judge Court also ordered that the benefits wrongfully withheld from the plaintiffs be paid and in Paragraph 8 of that order reserved the issues of release of retroactive payments of wrongfully withheld AFDC benefits to the class and damages suffered by plaintiffs and the class. (Alexander & Towsend v. Weaver, order, January 21, 1972).

Plaintiffs filed a motion and then an amended motion for injunctive and other relief pursuant to Paragraph 8 of the

January 21, 1972 order. Both plaintiffs and defendants filed numerous briefs in regard to retroactive payments and the Department of Health, Education and Welfare filed an *amicus curiae* brief expressing a view as to the extent that Federal matching funds would be available for retroactive payments. We are now prepared to rule on the plaintiffs' motion.

## II.

In their motion plaintiffs request various changes in AFDC regulations on which we need not elaborate; damages for plaintiffs and the class; attorneys fees, and retroactive relief to be accomplished by:

3a) notifying all applicants for or recipients of AFDC who completed high school since November 1963 (Plaintiff chose this date in view of the fact that the § 1983 statute of limitations is five years and the suit being filed in November of 1968 covered only the previous five years) whose AFDC benefits were denied or terminated in whole or in part because of defendants' enforcement of the invalid regulation, that they are now eligible for an AFDC grant for the period of time that they would otherwise have been eligible provided that they commence within one year after notice regular attendance at a school, college, university, vocational, or training school notice to be directed to all persons who made written or oral application concerning aid and were refused or withdrew the application because of actions or statements by a caseworker or employee of the Public Aid Department or were found eligible and were subsequently terminated.

3b) notifying other members of the class who did not apply for AFDC but otherwise met the requirements of (a).

4a) remitting to all applicants or recipients of AFDC who were denied all or part of their grant at any time since July 30, 1965 while a student regularly attending a school, college, or university or attending a vocational or technical school because of application of the invalid regulation the amount wrongfully withheld from each individual notice to be directed to all persons who made oral or written application and were refused . . .

4b) notifying all other members of the post-July 1965 class who did not apply for AFDC but otherwise met requirements of that class.

In short, plaintiffs seek blanket retroactive relief that would include everyone who might have been eligible back to 1963, i. e. those who were deterred by the regulation from going to college, those who went to college without state aid, those who went to trade school but would have gone to college absent the regulation and those who are presently on aid.

Defendants concede that retroactive relief under proper conditions ought to be given to those now in college who are otherwise eligible for AFDC aid provided that there exists a present unmet deficit and that there is a reasonable relationship to present need and that aid ought to be given those individuals attending college now but who are no longer eligible for AFDC because they are over 21 provided also that there is an unmet deficit and provided also that the deficit is not brought about by the individual's election not to work when he is indeed employable and could go to school at night. Defendants, however, oppose any retroactive aid to those who *have attended* college and have attained their degrees, those who *attended* college but who are no longer eligible and did not attain their degrees and those who *might* have attended college were it not for the invalid regulation.

It is our task to determine precisely which groups, if any, should be given retroactive relief.

### III.

Before we embark on a discussion of the application of retroactive relief in the specific context of welfare cases we ought to first briefly discuss general theories of retroactivity especially in view of the heavy reliance defendants place on recent developments in the criminal field.

In Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965) the Supreme Court declined to apply the search and seizure proscriptions of Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081 (1961) retroactively. In reaching this decision the Court traced the theory and history of retroactivity from the early common law rule of almost absolute retroactivity in civil cases based on the concept that a judge was a "discoverer" rather than a "creator" of law, to the more recent concept that retroactive or prospective application of a new decision is a subjective matter based on the particular facts in each case. (See Linkletter v. Walker, *supra* 381 U.S. pp. 622–629, 85 S.Ct. 1731 and cases cited therein for documented history of these developments). The Court went on to say:

> . . . we believe that the Constitution neither prohibits nor requires retrospective effect . . . Once the premise is accepted that we are neither required to apply, nor prohibited from applying, a decision retrospectively, we must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect, and whether retrospective operation will further or retard its operation. 381 U.S. 627–629, 85 S.Ct. 1737–1738.

■ Since *Linkletter*, the three-pronged test outlined therein has become more defined and has developed into the governing test in the area of criminal procedure for the determination of pro-spective or retrospective application of a decision: (1) the purpose to be served by the new rule; (2) the extent of reliance which has been placed upon the old rule and (3) the effect on the administration of the retroactive application of the new rule. See Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L. Ed.2d 882 (1966); (*non-retroactivity* for new rules regarding custodial interrogation); Tehan v. United States, ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966) (new rule concerning accused's failure to testify *denied retroactivity*); Stovall v. Deno, 388 U.S. 293, 87 S.Ct. 1967, 18 L.Ed.2d 1199 (1967) (*prospective application* of rules in police line-up identification); De-Stefano v. Woods, 392 U.S. 631, 88 S.Ct. 2093, 20 L.Ed.2d 1308 (1968) (*prospective application* of right to jury trial rule); Fuller v. Alaska, 393 U.S. 80, 89 S.Ct. 61, 21 L.Ed.2d 212 (1968) (*prospective application* of new rule regarding exclusion of evidence obtained by illegal interception of a communication); Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248 (1969) (*prospective application* of evidence obtained by electronic eavesdropping). See also Halliday v. United States, 394 U.S. 831, 89 S.Ct. 1498, 23 L.Ed.2d 16 (1969); Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1970); Williams v. United States, 401 U.S. 646, 91 S.Ct. 1148, 28 L.Ed.2d 388 (1971); Hill v. California, 401 U.S. 797, 91 S.Ct. 1106, 28 L.Ed.2d 484 (1971).

The defendants in their Brief In Opposition To Retroactive Payments begin with the premise that there is no distinction between civil and criminal cases in the criteria to be used in determining retroactive or prospective relief, and based on this underlying premise review a multitude of criminal cases to date that have applied that criteria and have denied retroactivity and finally use that criminal matrix to suggest that retroactivity ought to be denied in civil cases such as ours.

Defendants superimpose the three tests as enunciated in the criminal cases

cited and reach the conclusion as to each test that the denial of retroactive payments is the only course this Court can take. They assert that *the purpose of the rule* announced in the Supreme Court in our case is to assist AFDC recipients to obtain a college education, become self-sustaining and thus eliminate their need for welfare and that the only way that this purpose will be accomplished is by granting prospective relief to all 18–21 year olds who are attending or wish to attend college. The only retroactive payments that will serve the purpose of the rule, they argue are those to individuals who are *now* attending college, are eligible for welfare, without resources, in need of aid and have a current unmet deficit and to those individuals who are *now* attending college but are ineligible for AFDC because they are now over 21 provided that the latter category are not capable of employment to diminish their own deficit. As to those who already have their degrees, defendants assert, that the purpose of the rule has already been accomplished without AFDC aid and as to those who *have attended* college but did not receive their degrees and because of age are no longer eligible there is no assurance that the retroactive payments will be used to fulfill the purpose.

In applying the second test, *good faith reliance on the old rule,* the defendants also cite numerous cases in the area of criminal procedure and argue that the Illinois Department of Public Aid placed good faith reliance in its exclusion of college attendees from the AFDC roles and furthermore that various branches of Illinois state government took irreversible action based on this good faith reliance.

Finally, again analogizing our case to numerous criminal cases defendants claim that the third test, *the effect on the administration of justice* as applied to our case militates against retroactive payments since the effect on the Public Aid Department in hearing cases for retroactive payments would prove "insurmountable", would require decisions based on stale evidence, and would create exorbitant costs in administration.

■ We are not convinced by defendants application of this three-tiered test to our case for two reasons, the first being that the three-tiered criminal procedure test is not necessarily as adaptable to civil cases as it is to criminal cases given the fundamental difference in the considerations and equities to be taken into account in civil cases and secondly that even if we apply the precise test suggested by defendants we reach far different conclusions than they do.

As indicated the vast majority of cases cited by defendants are in the area of criminal procedure and are considered by defendants as equally applicable to civil cases because of the Supreme Court's indication in *Linkletter, supra,* 381 U.S. at 627, 85 S.Ct. at 1736 that "no distinction was drawn between civil and criminal litigation" and that there therefore ought not be any difference in the theory of retroactivity between civil and criminal cases. Yet upon examination of *Linkletter* we do not find that the Court developed the three-tiered test in regard to civil cases and then applied that test to criminal cases or vice versa that the Court developed the test in regard to criminal cases and then in conclusion said that it applies equally to civil cases. All we find is a prefatory statement of the general theory derived from later civil cases that a Court is not compelled to apply a decision retroactively as the common law dictated but has the *option* of applying the decision retroactively *or* prospectively as the Court believes the situation warrants based on the facts of each case and that the test used in *Linkletter* and subsequent cases was constructed out of the dicta regarding retroactivity appearing in numerous civil cases. It might be noted that in many of those subsequent cases cited by defendant the Supreme Court uses language that indicates that the formalized three-tiered test in its exact application is unique to the area of criminal procedure alone. In DeStefano v. Woods, 392 U.S. at 633, 88 S.Ct. at 2095

the Court said "In Stovall v. Denno, 388 U.S. 293, 297 [87 S.Ct. 1967, 1970, 18 L. Ed.2d 1199] the Court stated the considerations that affect the judgment whether a case reversing prior doctrines *in the area of the criminal law* should be applied prospectively" (emphasis added) and recites the three considerations; in Johnson v. New Jersey, 384 U.S. at 727, 86 S.Ct. at 1777 the Court indicated that *Linkletter* and *Schott* "establish the principle that in *criminal litigation* concerning constitutional claims" (emphasis added) the three-part criteria should be used; and in Desist v. United States, 394 U.S. 249, 89 S.Ct. 1033 the Court stated that in the finding of "new constitutional rules affecting *criminal trials* the Court has viewed the retroactivity or nonretroactivity of such decisions as a function of three considerations." (Emphasis added.) In fact, in the only recent civil case decided by the Supreme Court cited by defendants, Phoenix v. Kolodziejski, 399 U.S. 204, 90 S.Ct. 1990, 26 L.Ed.2d 523 (1970) the Court in dealing with the retroactivity problem therein very loosely discusses reliance and makes no mention at all of the three-part test that appears in the multitude of recent criminal cases.

We therefore have strong doubts that any great reliance can be placed in the precise test used in criminal cases and in the results reached therein as precedent for civil cases.

The critical difference between most of the criminal cases where retroactivity was denied, cited by defendants, and our case or any civil case for that matter is the fact that in the criminal cases the overwhelming consideration of the Court was the effects on society of a wholesale release of convicted felons because of technical changes in evidentiary rules, such as exclusionary search and seizure or custodial confession rules, which did not necessarily bear directly on the question of guilt or innocence as well as the difficulty of subsequent attempts to prove guilt beyond a reasonable doubt in cases where the evidence could be decades old.

In addition, a good many of the criminal cases deal with "new" exclusionary rules that seek to deter the unconstitutional conduct and by definition can only apply prospectively. In civil cases no such considerations are present which eliminates much of the body of criminal law cited by defendant as relevant precedent.

█ Yet even if we were to apply the three tests as framed by defendants our results would vary substantially. The "purpose of the new rule" test assumes first the creation of a "new" rule and second the existence of an "old" rule ingrained by prior decision in the practice of those relying upon it. (Whether or not a new rule is being created overlaps somewhat with the reliance factor). In our case, the Supreme Court in Townsend v. Swank did not create a "new" rule that confers eligibility for AFDC payments on 18–21 year olds who attend college. The Court rather than creating a new rule or adopting a new practice simply said that § 406(a) (2) of the Social Security Act never at any time intended to exclude college attendees and thus § 406(a) (2) from 1965 on applied to all 18–21 year olds otherwise eligible.

This is quite unlike *Linkletter* where the exclusionary rule of Mapp v. Ohio which was a *new practice* was denied retroactivity on the grounds that the purpose of the exclusionary rules was the deterrent of illegal police action and deterrence was irrelevant retrospectively and that furthermore the privacy invaded would not be restored by retroactive application of *Mapp*. Thus by no stretch of the imagination could a rule that was to act as a deterrent have any effect *but* in the future.

In our case, however, we are not dealing with a new, forward looking practice but rather with a statute that has always been in existence and whose meaning has been constant, albeit misinterpreted by Illinois and obscured by its unconstitutional regulations. Once that cloud of unconstitutional gloss is removed, the statute stands revealed as

having been applicable from the day of its promulgation.

Thus even if we were to assume that the purpose to be served by § 406's inclusion of college attending 18–21 year olds was to assure that they would not be deprived of a college education because of need we cannot simply say that the purpose was brought to light today by the Supreme Court's decision and that we therefore must consider that purpose as it will be served in the context of today's situation and current financial facts. Such an approach would admittedly indicate a denial of retroactive payments to those who attended college or those who wanted to attend college and would cause us to consider current financial status and employability.

We must however view the purpose of that statute not as of today but as it applied to any eligible member of the class at any given time from 1965 onward and if at that point of eligibility the purpose would have been accomplished, a right to AFDC benefits vested in that individual based on considerations relevant at that point alone and frozen in time. That vested right cannot now be divested by the argument that we must look at the individuals financial situation *today* or whether the purpose would be accomplished *today*.

Thus the "purpose of the new rule" test is not really applicable here since there is no "new" rule, only the revelation of an old one, and even if purpose was a consideration that purpose would have to be assessed as of the time of its applicability absent the invalid regulation and not as of today.

In regard to the reliance test defendants claim that they have withheld payments based on the good faith reliance on their interpretation of the Social Security Act and that this reliance compels a prospective application of *Townsend*. We disagree. Although there was a certain degree of justified reliance on the part of the state, taking into consideration *all* the factors in this case we find that it is a reliance that fails to reach

the level that requires prospective relief alone. The reliance here is unlike that in the criminal cases cited by defendant which dealt with evolving principles of constitutional law upon which the Supreme Court itself had ruled several times and which reliance was based on a vast body of "old" law and widespread practice.

In our case the only reliance is that which is based solely on the state's self-serving interpretation of the Social Security Act, an interpretation which the Supreme Court found totally unjustified. To permit this reliance as a defense against retroactive payments would allow any state to promulgate a statute of dubious constitutionality limiting the funds it must expend at the minimal risk of a subsequent finding of unconstitutionality (if indeed it is challenged) which finding would come only some time later after the case had gone the judicial route and which would deny retroactive relief thus giving the state the desired effect and savings at least during the period of its existence.

This in fact was a part of the Court's reasoning in awarding payments illegally withheld in McDonald v. Department of Public Welfare, 430 F.2d 1268 (5th Cir. 1970). The Court stated:

> Although never stated in these terms, appellant is apparently arguing that *Shapiro* (Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed. 2d 600) should be given prospective effect only. In support of this position, it states that the Florida Department of Public Welfare has relied on the state durational residence requirement. We find this argument singularly unpersuasive. Presumably, all state statutes which have ever been invalidated as unconstitutional were relied on by the state employees until invalidated. Appellant has launched its argument, effectively unsupported, directly in the teeth of *the general rule, which has persisted for centuries, that judicial precedents in cases of this nature normally have retroac-*

*tive as well as prospective effect.* We have been offered no justifiable reason for departing from this venerable and well established principle in the instant case. (Emphasis supplied.)

A similar conclusion was reached in Rothstein v. Wyman, *infra*, where the Court speaking of the case for retroactive payments said that a state "secure in the knowledge that it could plead the burden of administrative costs . . . would be encouraged to violate constitutional strictures until enjoined, since it would retain permanently the money denied."

Lastly, defendants contend that the award of retroactive payments will have a dire effect on the "administration of justice" by creating insurmountable administrative problems in the handling of claims for retroactive relief, by depleting the welfare fund and by depriving current welfare recipients of their just due.

It should be noted that the test of "effect on the administration of justice" borrowed by defendant from the area of criminal procedure has a meaning unique to that area in particular. It does not simply mean the effect on "administration" but rather on the "administration of *justice*" which in the various criminal cases that adopted that test was the inescapable consideration militating against retroactive relief of the impact on society of the mass release of criminals who were tried and sentenced under conditions prohibited by the new rule and the difficulty in retrying cases in terms of stale evidence, disappearing witnesses and the burden on already overloaded criminal dockets.

In our case the effect is purely *administrative* and does not reach anywhere near the proportions of that in any of the criminal cases at least in regard to those individuals to which we grant retroactive relief. We deal here with the handling of claims and not with the release of felons.

In addition several recent cases discount fiscal or administrative *costs* as a consideration in deciding whether to grant retroactive relief. In Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) fiscal arguments were ruled out and in Rothstein v. Wyman (S.D.N.Y. 69 Civ. 2763, Feb. 25, 1972) the Court rejected a motion to alter judgment in relief granted in a welfare case stating:

It is hard to imagine an instance where the cost of determining and delivering public assistance benefits for a period in the past will not greatly exceed the cost of paying those same amounts as part of a department's normal day-to-day operations. If a court were to deny retroactive payments because of increased administrative costs alone, the State would never be compelled to repay benefits to which recipients were later found entitled. As a result, the State would be consistently rewarded for its illegal behavior and the plaintiffs denied meaningful and deserved relief. Furthermore, secure in the knowledge that it could plead the burden of administrative cost, the State would be encouraged to violate constitutional and statutory strictures until enjoined, since it would retain permanently the money denied to the affected recipients. Cf. Almenares v. Wyman, 334 F.Supp. 512 ([D.C.] 1971), aff'd, 453 F.2d 1075 (2d Cir. 1971), cert. denied, [405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815] (Feb. 23, 1972).

There will concededly be administrative costs in our case but we do not believe them to be so great as to warrant denial of retroactive relief. Yesterday's physical suffering ought not be written off against tomorrow's administrative distress.

IV.

Our decision to grant partial retroactive relief is also based both in our conceptualization of AFDC benefits and welfare assistance in the model archetypical situation stripped of any question of need, fraud or administrative

problem and in the high value we place on a college education.

In deciding to grant public assistance to deprived segments of our society the State and Federal governments have determined that there is a certain minimum level of subsistence below which a citizen of this Nation ought not be forced to live and that the inability of certain individuals to achieve that level due to sociological and economic forces beyond their control warrants a governmental helping hand that will alleviate the "brutal need" that threatens their decent and dignified survival. Indeed it is not a new concept though its manifestation has multiplied in recent years in the appearance of numerous general and categorical assistance programs. It is this concept that the Supreme Court referred to in Goldberg v. Kelly, 397 U.S. 254 (1970) at 264–265, 90 S.Ct. 1011 at 1019, 25 L.Ed.2d 287:

> From its founding the Nation's basic commitment has been to foster the dignity and well-being of all persons within its borders. We have come to recognize that forces not within the control of the poor contribute to their poverty. This perception, against the background of our traditions, has significantly influenced the development of our contemporary public assistance system. Welfare, by meeting the basic demands of subsistence, can help bring within the reach of the poor the same opportunities that are available to others to participate meaningfully in the life of the community. At the same time, welfare guards against the societal malaise that may flow from a widespread sense of unjustified frustration and insecurity. Public assistance, then, is not mere charity, but a means to "promote the general welfare, and secure the Blessings of Liberty to ourselves and our Posterity."

Thus public assistance is a manner of income subsidy and is in lieu of a salary that the individual would earn were societal conditions not what they are.

Once eligibility exists the State's commitment to provide that income vests in and accrues to that individual and where that commitment is not met due to an unconstitutional withholding of benefits it must be made up to cover that period during which it was wrongfully denied. The fact that one has survived that "brutal need" without assistance does not wipe out the right to assistance that was vested at the time of need and does not permit the consideration of current circumstance.

The situation is not unlike that of the State's wrongful withholding of salary over a period of time from some of its employees and when the determination is made that the withholding was unconstitutional there is no question that back pay is warranted since the salary accrued at the time of its wrongful denial and it is no defense to say that the employees current improved financial status warrants a denial of retroactive pay.

The benefits having accrued to the eligible recipients in our case, a manner of a constructive trust was imposed on the state regarding these funds pending release on subsequent submission of proof of eligibility.

The fact that the denial of these funds related to college attendance rather than basic physical needs makes that deprivation no less profound and no less consequential. We fortunately live in a time that has painfully come to recognize that mental deprivation can be as harmful—if not more harmful than physical deprivation and that the gateway to dignity for those who seek to break out of the inner city syndrome and who seek to shake off the poverty of their fathers is through the doors of the university. Thus the deprivation suffered by those who so earnestly and perseveringly pursued the dignity conferred by that priceless commodity we call higher education should certainly be taken into account.

## V.

In reviewing the multitude of welfare cases decided in recent years we find a judicial proclivity for granting retroactive benefits which tends to support this view while at the same time there are clear indications that we ought to stop short of granting retroactive relief to the extent desired by plaintiffs. The aforementioned cases where welfare benefits were wrongfully withheld fall into two broad categories: 1) procedural or administrative exclusions and 2) substantive exclusions.

Procedural exclusions are those instances where the welfare applicant or recipient is unquestionably eligible for assistance in terms of need but is nevertheless denied benefits for a period due to administrative delay or by a regulation that touches upon some peripheral consideration other than need. The prime example of this genre of case is the start of welfare benefits at the point of administrative determination of eligibility which occurs many months after an application has been submitted and which fails to take into consideration the interim period between application and grant. In Rodriguez v. Swank, 318 F.Supp. 289 (N.D.Ill.1970) the Court granted retroactive relief to all applicants from 30 days after they applied for benefits to the time of the administrative decision to grant relief. (It should be noted that in a suit for relief in a case of this nature the action is in the nature of one for retroactive relief since the relief sought is for a past period rather than a future one). See also Lewis v. Riggins, (N.D. Indiana 71 H 19(2) May 19, 1971) (Failure to make decision on applicants within sixty days unconstitutional and *retroactive relief awarded* from 60 days after application to time of grant.); Jordan v. Weaver (N.D.Ill. 71 C 70 March 15, 1970) (Failure to award benefits within 30 days to aged and blind and within 60 days to disabled held unconstitutional; *retroactive benefits awarded*).

A sub-category of the procedural exclusion class of cases that is in a sense both procedural and substantive is the denial of welfare to otherwise eligible applicants for the sole reason that they have not resided in the state for a sufficient amount of time. These limitations have likewise been held unconstitutional. See Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322,·22 L.Ed.2d 600 (1969); Gaddis v. Wyman, 304 F.Supp. 717 (N.D.N.Y.1969) (1 year residency requirement); McDonald v. Department of Public Welfare, 430 F.2d 1268 (5th Cir. 1970) (durational residency requirement for aid to blind held unconstitutional. *Retroactive relief granted* though plaintiff subsisted without it); Baxter v. Birkins, 311 F.Supp. 222 (D.Colo.1970) (one year residency requirement for AFDC benefits unconstitutional. *Retroactive relief granted*).

What must be understood about the retroactive payments in this first category of cases is that retroactivity is simplified by the existence of concrete, closed, plaintiff classes that obviates the need for any further subjective or substantive inquiry. Thus the class of those who are otherwise eligible but are denied relief between 30 days after their application and the subsequent grant of relief is easily determined by simply checking dates of application and dates of first relief granted.

The second category of cases deals with the State's decision to deny benefits based on a substantive determination of eligibility rather than on a procedural delay or rule.

The classic case of this type is King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968). AFDC benefits are awarded by Section 406(a) of the Social Security Act to dependent children who have been deprived of "parental" support. Alabama promulgated a regulation under which AFDC payments were denied to the children of a mother who "cohabits" in or outside the home with an able-bodied man, the man being considered a "substitute father" or nonabsent parent thereby disqualifying the family from AFDC under the regulation which requires the absence of the parent

as a prerequisite for benefits. The Supreme Court held the Alabama regulation unconstitutional as being inconsistent with § 406(a). See also Doe v. Swank, 332 F.Supp. 61 (N.D.Ill.1971) (denial of aid to mother of child who refuses to cooperate with State's Attorney in identifying putative father held unconstitutional. *Retroactive relief awarded*); Grubb v. Sterrett, 315 F.Supp. 990 (N.D.Ind.1970) (regulation that AFDC benefits are denied where stepparent is living in home since parental support is not deprived held unconstitutional, because stepparent has no legal obligation to support child. *Retroactive relief granted*); Ojeda v. Hackney, 319 F. Supp. 149 (N.D.Tex.1970) (stepfather as substitute parent unconstitutional. See *Grubb* immediately *supra*. *Retroactive payments awarded*). Brooks v. Yeatman, 311 F.Supp. 364 (M.D.Tenn. 1970) (denial of cost of living adjustments held unconstitutional. *Retroactive benefits awarded*); Chicago Welfare Rights Org. et al. v. Swank (Cir.Ct. Cook Cty. 70 CH 3532 Aug. 30, 1971) (denial of shelter increase allowance and cost of living increases held illegal. *Retroactive payments awarded*); Rothstein v. Wyman, 303 F.Supp. 339 (S.D. N.Y.1969) (regulation giving aged, blind and disabled in Westchester and Nassau Counties lower payments than New York City residents held unconstitutional. *Retroactive payments awarded*); Alverado v. Schmidt, 317 F.Supp. 1027 (W.D.Wis. 1970) (reduction of AFDC benefits based on illegal computation by state held unconstitutional. *Retroactive relief awarded*); Triplett v. Cobb, 331 F.Supp. 652 (N.D.Miss.1971) (exclusion of certain AFDC mothers from State Medical Assistance program held unconstitutional. *Retroactive payments awarded*); Schaak v. Schmidt, 310 F.Supp. 941 (E.D.Wis. July 7, 1971) (regulation holding that $7,500 equity in home excludes individual from medical assistance program but not those on categorical assistance held unconstitutional. *Retroactive payments granted*).

The vast majority of this second category of cases as is evident also awarded retroactive relief though the administrative problems may have been more difficult. The class entitled to retroactive relief in most of these substantive cases can be determined by objective standards rather than by subjective inquiry. In other words if a welfare recipient was terminated solely because a stepfather was living at home, the period during which benefits were illegally withheld can be easily computed by determining the period of the stepfather's residency; so with denials of cost of living increases etc. What is evident, however, from both the procedural and substantive exclusion cases is that the class to whom retroactive payments was awarded consisted of a concrete, cohesive closed-end group whose membership could be determined on the basis of objective indicators and whose boundaries could be delineated without inquiry into state of mind or subjective, submerged conjectural factors. In no case that we reviewed were retroactive payments made in a situation that necessitated an inquiry as to whether a welfare recipient or applicant would or would not have taken certain action were it not for the invalid regulation.

## VI.

■ Having taken into account the various considerations affecting retroactive or prospective relief and basing our award of retroactive relief on: whether the right to relief had "vested"; whether the class is a cohesive and concrete one based on factors visible at the time for which retroactive relief is to be granted; the various situations in other welfare cases where retroactive relief was granted and finally re-examining the boundaries for which this class action was brought we reach the following conclusions.

We award retroactive relief to those individuals who were 18–21 years old during the period July 30, 1965 to the present who *attended college* or who are

now *attending college* whose AFDC benefits were terminated because of college attendance or who were *denied* benefits after having made formal application for them *while actually attending college* or who formally applied for AFDC benefits in order to attend college but were denied AFDC and *ultimately attended college* despite the denial. The retroactive award is to be made only for those periods between July 30, 1965 and the present for which the following requirements can be established: 1) actual college attendance 2) termination of or formal application for and denial of AFDC payments and 3) general eligibility for AFDC payments in terms of age and need during the periods in question and based upon the factual circumstances and standards of eligibility current during the period of attendance, present employability, age, or financial status not to be considered a relevant factor.

Thus the four critical requirements are *age, college attendance, need* and *denial*. We believe that this class conforms to the guidelines we set out above. The right to these retroactive payments "vested" in these individuals by their *request* for benefits and their *college attendance*; the class is a cohesive and concrete one whose membership is easily determinable by the visible and objective indications of college attendance, need, and either termination or denial of benefits and whose makeup is analogous to the classes of individuals awarded retroactive relief in the welfare cases cited above; and finally the individuals fit into the class as delineated by the class action brought by plaintiffs. The class was defined by the Court as including "all children between the ages of eighteen and twenty-one and their parents or legal guardians who are *denied AFDC benefits* solely because said children *are college or university students* instead of high school, trade school or vocational school students." (emphasis added) Alexander v. Swank, 314 F.Supp. 1082 at 1084 (N.D.Ill.1970). Thus it is clear from this delineation of the class that *college attendance* and *denial* of benefits

are a prerequisite for membership. Both plaintiffs Alexander and Townsend were attending college and their AFDC benefits were terminated solely for that reason.

It is for these same reasons that we deny retroactive relief to those individuals who "may" have attended college were it not for the invalid regulation, or who attended vocational or technical schools and "may" have attended college were it not for the invalid regulation or those who attended college but never requested AFDC relief in order to attend college.

The rights as to this class never "vested" since they never actually attended college or never requested benefits in order to attend college, both attendance and a request being necessary to obtain a vested right to the payments. The class would be a totally incohesive one whose membership could only be determined by speculative and subjective criteria, whose ultimate delineation would be governed by the highly conjectural state-of-mind question as to whether one "may" or "may not" have attended college were it not for the regulation; and whose boundaries would of necessity have to be drawn by a multitude of factors buried and invisible at the time of the claimed deprivation.

In reviewing all of the welfare cases cited we find no instance where retroactive relief was granted to so permutable and tenuous a class. A situation analogous to ours would be a suit subsequent to Shapiro v. Thompson, *supra*, which struck down residency requirements for welfare payments, wherein a native of Alabama, for example, who was a recent arrival in Connecticut brought suit in Connecticut claiming that he would or "may" have traveled to Connecticut several years sooner had it not been for the invalid residency requirement and that he is therefore entitled to retroactive payments back to the time he would or "may" have traveled to Connecticut. Needless to say he would not be entitled relief for so remote and conjectural a

claim. The class of those who "may" have attended college is no less conjectural.

Finally the class as delineated by this Court at the start of this action refers to those individuals who are denied AFDC benefits solely because they "*are* college or university students", 314 F. Supp. at 1084 and makes no mention of inclusion in the class of those who "may" have attended college. Plaintiff in arguing that needy children who merely wished to attend college were granted standing to challenge the illegal regulations and that the class having been determined as including those individuals cannot now be disturbed by the exclusion of the latter group from the grant of retroactive payments misconceives the implication of that standing. All the Court said was that "a needy child between the ages of eighteen and twenty-one who merely wishes to attend college *might* possess a personal stake sufficient to establish the requisite adverseness necessary for standing to challenge section 4–1.1." 314 F.Supp. at 1085. Thus the Court never actually conferred standing on that class. In addition even if standing had been conferred, plaintiff confuses the *practical* "personal stake" of one who wishes to attend college in having the regulation changed in terms of sufficiency for standing, with a financial stake which is nowhere mentioned or implied. Thus the class of those who *wish* to attend college which is a purely prospective one and the class of those who *wished* in the past to attend college which is a purely retrospective one are poles apart and the conferral of standing on the former has absolutely no relationship to the granting of retroactive payments to the latter.

We have consciously avoided mentioning the *amicus curiae* brief of H. E. W.

regarding the extent of Federal matching funds which will be available to cover the retroactive payments until this juncture since we believe that the decision regarding retroactive payments ought to be reached based upon the substantive rights of the recipients rather than upon the administrative byplay between Washington and Illinois. The H. E. W. brief is therefore a fitting conclusion to our decision. In examining the views of H. E. W. we are gratified to find that availability of Federal matching funds for retroactive payments conforms precisely to the classes we have designated and utilizes the same criteria as we do in determining eligibility, e. g. attendance in college and eligibility determined as of the time of attendance.

### VII.

We have examined plaintiffs request for both attorney's fees and damages and have reviewed the various cases regarding relief of this nature. We do not wish to further lengthen this already lengthy opinion and therefore suffice it to say we do not believe that damages, attorney's fees or costs are either warranted or appropriate in this case considering all of the relevant factors. Attorney's fees and costs are especially inappropriate in view of the fact that the various services and costs incurred were provided by a legal aid bureau which is primarily funded by the Federal Government and the litigants were not required to incur any personal costs.

An appropriate Order reflecting the retroactive relief granted in this Memorandum Opinion will be submitted within 10 days.

SWYGERT, Chief Judge, and PERRY, J., concur.