**Georgia TOWNSEND et al., Plaintiffs-Appellees (Cross-Appellants),**

v.

**Joel EDELMAN, acting successor to Edward T. Weaver, et al., Defendants-Appellants (Cross-Appellees).**

Nos. 73–1960, 73–1961.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 20, 1975.

Decided June 2, 1975.

Joan Humphrey, James O. Latturner, Edward B. Beis, Michael F. Lefkow, Chicago, Ill., for Townsend.

William J. Scott, Atty. Gen., Donald Carnow, Chicago, Ill., for Edelman.

Before PELL and SPRECHER, Circuit Judges, and JAMESON, Senior District Judge.*

SPRECHER, Circuit Judge.

This appeal and cross-appeal raise two issues. First, whether a monetary award in the form of benefits withheld · from the plaintiff class by defendant state officials is barred by the Eleventh Amendment. Second, whether attorneys' fees can be assessed against the defendants for defending the Illinois statute and policy challenged by this action.

I

In 1969 plaintiff Georgia Townsend, individually and on behalf of her daughter, intervened in this action seeking declaratory and injunctive relief restraining defendant state welfare officials from enforcing a state statute[1] and regulation[2] insofar as they denied Aid to Families with Dependent Children (AFDC) benefits to otherwise eligible 18–21 year-olds because they attended a college or university rather than a technical or vocational school. Plaintiff

---

* Senior District Judge William J. Jameson of the District of Montana is sitting by designation.

1. Ill.Rev.Stat. ch. 23, § 4–1.1.

2. Illinois Public Aid Regulation 150.

Townsend sought damages against defendants in the amount of public assistance payments improperly withheld.

In the initial proceedings below the district judge denied motions to dismiss the complaint and pursuant to 28 U.S.C. §§ 2281, 2284, convened a three-judge court. Alexander v. Swank, 314 F.Supp. 1078 (N.D.Ill.1969). That court determined the action was properly maintainable as a class,[3] and that the plaintiffs had standing to challenge the state law. The court, however, denied both plaintiffs' statutory claim based on the supremacy clause,[4] and equal protection argument.[5]

On direct review in the Supreme Court it was held that the Illinois statute and regulation conflicted with Section 406(a)(2)(B), Social Security Act, 42 U.S.C. § 606(a)(2)(B) and for that reason were invalid under the supremacy clause. Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971) (*Townsend I*).[6] The Court in its mandate filed with the district court on January 7, 1972, remanded the cause to that court for further proceedings in conformity with its opinion.

Pursuant to that mandate the three-judge court on January 21, 1972, enjoined state officials from enforcing that portion of the Illinois law held by the Supreme Court to be in conflict with federal law, and to furnish within 30 days AFDC benefits to those eligible as a result of the decision. The court also ordered defendant officials to pay the two named plaintiffs AFDC benefits wrongfully withheld in the past.[7] The court retained jurisdiction over the case in order to determine the damages to be paid because of AFDC benefits wrongfully withheld for the remainder of the class.

On June 30, 1972, the three-judge court entered an opinion with reference to its decision as to the remainder of the class. The court said:

We award retroactive relief to those individuals who were 18–21 years old during the period July 30, 1965 to the present who *attended college* or who are now *attending college* whose AFDC benefits were terminated because of college attendance or who were *denied* benefits after having made formal application for them *while actually attending college* or who formally applied for AFDC benefits in order to attend college but were denied AFDC and *ultimately attended college* despite the denial. The retroactive award is to be made only for those periods between July 30, 1965 and the present for which the following requirements can be established: 1) actual college attendance 2) termination of or formal application for and denial of AFDC payments and 3) gen-

---

3. The class was defined as:

 [A]ll children between the ages of eighteen and twenty-one and their parents or legal guardians who are denied A.F.D.C. benefits solely because said children are college or university students instead of high school, trade school, or vocational school students. Alexander v. Swank, 314 F.Supp. 1082, 1084–85 (N.D.Ill.1970).

4. Plaintiffs asserted that the Illinois statute and regulation were inconsistent with Section 406(a)(2)(B) of the Social Security Act, 42 U.S.C. § 606(a)(2)(B).

5. Plaintiffs asserted that the creation of two classes of poor families with dependent children differing only that in one the dependent child attends college and in the other the child attends either high school or technical vocational school was an irrational classification.

6. The Court said:

 Thus, King v. Smith [392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118] establishes that, at least in the absence of congressional authorization for the exclusion clearly evidenced from the Social Security Act or its legislative history, a state eligibility standard that excludes persons eligible for assistance under federal AFDC standards violates the Social Security Act and is therefore invalid under the Supremacy Clause. *Townsend I, supra* at 286, 92 S.Ct. at 505.

7. Defendants were ordered to remit the sum of $812.24 to Jerome Alexander and $2,711.80 to Omega Minor.

eral eligibility for AFDC payments in terms of age and need during the periods in question and based upon the factual circumstances and standards of eligibility current during the period of attendance, present employability, age, or financial status not to be considered a relevant factor.

Alexander v. Weaver, 345 F.Supp. 666, 677–78 (N.D.Ill.1972) (emphasis in original).

The court rejected plaintiffs' argument that retroactive payments be made to all those who would have gone to college, but for the state's unconstitutional denial of benefits. The court also denied plaintiffs' claim for attorneys' fees.

This decision was implemented by an order entered November 28, 1972. An appeal to the Supreme Court was taken from this decision, and the Supreme Court on May 29, 1973, vacated the district court's order and ordered that a fresh judgment be entered so a timely appeal could be taken to the court of appeals. Edelman v. Townsend, 412 U.S. 914, 93 S.Ct. 2733, 37 L.Ed.2d 141 (1973) (*Townsend II*).

Pursuant to that order the district court on July 13, 1973 entered a fresh order substantially the same as its November 28, 1972 order implementing its June 30, 1972 opinion (345 F.Supp. 666). It is from this decision defendants appeal to this court.

## II

On December 9, 1974, this court ordered that plaintiffs' motion to dismiss the appeal be taken with the case on the merits. We now consider that motion in connection with the Eleventh Amend-

ment claim raised by the defendant state officials on this appeal.

We start with the proposition that if the holding in Edelman v. Jordan, 415 U.S. 651, 94 S.Ct. 1347, 39 L.Ed.2d 782 (1974), is to apply, no monetary award may be affirmed that includes payment for the period prior to the entry of injunctive relief (January 21, 1972 order) against defendant state officials after remand from the Supreme Court.[8]

Plaintiffs first contend that *Edelman* is distinguishable from the present case. They argue that *Edelman* only held that where state law and policy violated HEW regulations that a federal court's remedial power to award retroactive relief was limited, that in the present case the Supreme Court indicated that there was in all probability a Fourteenth Amendment equal protection violation, *Townsend I, supra* 404 U.S. at 291, 92 S.Ct. 502, and that *Edelman* does not hold that a court's remedial powers would be similarly limited by the Eleventh Amendment where it is determined that a state welfare policy violates the Fourteenth Amendment.

Even conceding that the Supreme Court's holding in *Townsend I* can be read to find an equal protection violation, we believe *Edelman* is controlling. *Edelman* also involved a Fourteenth Amendment claim, and although not directly referred to by the majority, we do not see how any different result would be reached if that had been the basis of the Court's holding.[9] The fact that the Fourteenth Amendment was enacted after the Eleventh Amendment does not abrogate the latter in cases involving the former. The two amendments must be interpreted in light of each other. This

---

8. It is only from the entry of the injunction that the defendant officials became obligated to pay the plaintiffs. Vargas v. Trainor, 508 F.2d 485, 491 (7th Cir. 1974), cert. denied, —— U.S. ——, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975). That order to pay was prospective relief and clearly authorized by *Edelman*. We assume that any violation of that order would be handled by civil contempt proceedings and would be covered by this court's decision in Rodri-

quez v. Swank, 496 F.2d 1110 (7th Cir.), cert. denied, 419 U.S. 885, 95 S.Ct. 151, 42 L.Ed.2d 125 (1974).

9. Indeed, if the Supreme Court were in fact making a distinction between statutory claims and Fourteenth Amendment claims in relation to the Eleventh Amendment, it would have been obliged to discuss the Fourteenth Amendment claim in *Edelman*.

is precisely the effect of *Edelman.* By allowing actions against state officials for injunctive prospective relief whether it be for violations of the equal protection clause or the supremacy clause, while limiting relief to exclude retroactive monetary awards, the Court has struck a balance between the need for obtaining relief from state officials and the Eleventh Amendment right of states not to have their public treasuries severely depleted by large retroactive awards.

Plaintiffs next argue that this court does not have the power to reverse the mandate of the Supreme Court in *Townsend I.* Their theory is that since the complaint prayed for damages and their position was upheld by the Court in *Townsend I,* that it is now too late for the state to make an Eleventh Amendment claim.

It is certainly true that lower courts cannot refuse to follow the mandate of a higher court. If the Supreme Court in *Townsend I* had explicitly considered the Eleventh Amendment issue, we would of course be bound by that determination.[10] The Supreme Court, however, in its mandate only ordered the lower court to enter an order consistent with its opinion. That opinion made no reference to retroactive monetary relief. Indeed, the Court did not even have to implicitly consider the Eleventh Amendment argument in *Townsend I,* since jurisdiction was properly based on the injunctive and declaratory relief also prayed for in the complaint. In other words, the Eleventh

Amendment question was not considered by the Court, nor did it have to be, and any decision upholding defendants' Eleventh Amendment claim would not be inconsistent with the mandate of *Townsend I.*

 Having decided we are not precluded from considering defendants' Eleventh Amendment argument, we next consider whether defendants have waived that defense. *Edelman* teaches us that an Eleventh Amendment argument is jurisdictional in the sense that it can be raised for the first time on appeal. Wilson v. Weaver, 499 F.2d 155, 158 n. 5 (7th Cir. 1974), vacated on other grounds sub nom. Trainor v. Wilson, 420 U.S. 999, 95 S.Ct. 1440, 43 L.Ed.2d 758 (1975). Failure to assert the defense on behalf of defendant state officials does not constitute the express waiver that is required. *Edelman, supra* 415 U.S. at 673, 94 S.Ct. 1347.

Plaintiffs further contend that the court can find a waiver of defendants' Eleventh Amendment claim from the statements that the defendants made before the district court on remand from the Supreme Court. Plaintiff quotes at length from a document entitled "Brief in Opposition to Retroactive Payments." In that brief defendants argue extensively against retroactivity of the award albeit not on Eleventh Amendment grounds. The language relied on by plaintiffs is in reference to whether a blanket retroactive award would fulfill the purpose of the Act as interpreted by the Supreme Court in *Townsend I.*[11] It

---

10. 1B J. Moore, Federal Practice ¶ 0.404[10] (2d ed. 1974).

11. Defendants' brief states:

 With respect to those who are now in college, it seems apparent that these people will benefit from the new rule as interpreted by the Supreme Court. They should be given every incentive to finish college and thus receive their degrees. However, even as to this class of recipients, the granting of retroactive benefits that have no reasonable relationship to present need, would not further the purpose of the rule. If these people can in fact establish that they have a deficit in

their current budget brought about as a result of failing to receive AFDC benefits, equity would have it that this deficit should be eliminated by an amount not to exceed current statutory limits of benefits denied. But the burden of proof clearly rests upon the AFDC recipient to establish need. The State of Illinois would not object to giving such an individual the additional aid to eliminate the deficit under the circumstances.

 With respect to those individuals who are now attending college and who are seeking their degrees, but who are no longer eligible for AFDC due to being over 21 years of age, it would seem that they also should be

concluded that except in two narrow areas the purpose would not be fulfilled by a retroactive award. The language used by the defendant was a small part of a large argument before the court and represented a less drastic remedy as compared to plaintiffs' position. It was not the type of clear express waiver discussed in *Edelman.*

Plaintiffs' reliance on this court's recent decision in Vargas v. Trainor, 508 F.2d 485 (7th Cir. 1974), cert. denied, 420 U.S. 1008, 95 S.Ct. 1454, 43 L.Ed.2d 767 (1975), is misplaced. In *Vargas* a representation, that deficiency payments would be made if plaintiffs eventually succeeded on the merits, was made to this court in an effort to persuade the court not to issue an injunction against the defendant. The defendant's representation was made in order to prevent the entry of an injunction requiring the payment of welfare benefits that would be ultimately lost if defendant prevailed on appeal. No such representation was made in this case with regard to the benefits withheld prior to entry of the January 21, 1972 injunction order.[12]

■ Even if the language that plaintiffs cite seemingly indicated the State of Illinois' willingness to pay out some retroactive benefits, their position

was made abundantly clear two months later when defendants filed another brief dealing extensively with the Eleventh Amendment issue.[13] The filing of this latter document is inconsistent with plaintiffs' waiver theory.[14]

For the foregoing reasons, plaintiffs' motion to dismiss the appeal is denied and the judgment of the district court insofar as it grants retroactive monetary relief prior to the issuance of the January 21, 1972 injunction is reversed.[15]

### III

Plaintiffs have cross-appealed from the district court's denial of attorneys' fees. We affirm the denial although for somewhat different reasons.

■ In denying plaintiffs' request for attorneys' fees the district court relied in part on the fact "that the various services and costs incurred were provided by a legal aid bureau which is primarily funded by the Federal Government and the litigants were not required to incur any personal costs." Alexander v. Weaver, 345 F.Supp. 666, 679 (N.D.Ill. 1972). The fact that plaintiffs were not obligated to pay any fees because they were represented by a legal services organization, does not by itself preclude

---

granted retroactive relief provided they are capable of establishing an unmet deficit.

\* \* \* \* \* \*

Wherefore, the Illinois Department of Public Aid respectfully requests that an order be entered denying plaintiffs' petition for blanket retroactive relief, and that an order be entered that the case be remanded to the Illinois Department of Public Aid to implement and grant retroactive relief to those individuals now eligible for AFDC and who are attending school and who are now eligible for assistance where such claimants can establish a deficit in their current budget.

12. Additionally, the defendant's waiver in *Vargas* was made after the Supreme Court's decision in *Edelman* and it should have been quite clear that this court would rely on their representation. In the present case the language plaintiff relies on was presented to the court prior to the decision in *Edelman* and undoubtedly no one construed it as a waiver of the defendants' Eleventh Amendment rights.

13. Brief in Opposition to United States Department of Health, Education and Welfare's Brief (filed June 5, 1972).

14. Plaintiffs make one final argument that Illinois has waived any type of Eleventh Amendment immunity by its new state constitution. Article 13, Section 4 of the 1970 Constitution, S.H.A., provides that "[e]xcept as the General Assembly may provide by law, sovereign immunity in this State is abolished." The constitution by its own terms did not make this provision effective until January 1, 1972. Transition Schedule § 1(e). Prior to that date, however, the General Assembly passed Ill.Rev. Stat. ch. 127, § 801 effective as of January 1, 1972, reinstating sovereign immunity in Illinois.

15. This disposition of the appeal and motion to dismiss makes unnecessary resolution of the issue plaintiffs raise on their cross-appeal of whether the class to receive the retroactive benefits should be defined more broadly.

the award of fees to the organization providing the services. Hairston v. R & R Apartments, 510 F.2d 1090 (7th Cir. 1975). Nor do we read any federal law or regulation cited to us as precluding a court from awarding attorneys' fees directly to a legal services organization for services rendered.[16]

 We deny attorneys' fees, however, because the plaintiffs have not asserted any sufficient basis upon which they can be awarded.

It is clear to us that the recent Supreme Court case of Alyeska Pipeline Service Co. v. The Wilderness Society, 421 U.S. 240, 95 S.Ct. 1612, 44 L.Ed.2d 141 (1975), forecloses an award of attorneys' fees on a private attorney general rationale where there is no statutory authorization, as in this case. The Court said:

> Since the approach taken by Congress to this issue has been to carve out specific exceptions to a general rule, that federal courts cannot award attorneys' fees beyond the limits of 28 U.S.C. § 1923, those courts are not free to fashion drastic new rules with respect to the allowance of attorneys' fees to the prevailing party in federal litigation or to pick and choose among plaintiffs and the statutes under which they sue and to award fees in some cases but not in others, depending upon the courts' assessment of the importance of the public policies involved in particular cases. Nor should the federal courts purport to adopt on their own initiative a rule awarding attorneys' fees based on the private attorney general approach when such judicial rule will operate only against private parties and not against the Government.

*Id.* at 269, 95 S.Ct. at 1627.

The Court in a footnote stated that in recent years some lower federal courts had erroneously employed the private attorney general approach to award attorneys' fees. *Id.* at n. 46.

Other rationales for the awarding of attorneys' fees in the absence of statutory authorization that remain viable in light of *Alyeska Pipeline Service* (*Id.* at 257–59, 95 S.Ct. 1612) are inapplicable to the case at hand. Although Mr. Justice Marshall in dissent argued for an expanded view of the "common benefit" theory (*Id.* at 275–77, 95 S.Ct. 1612) the *Alyeska Pipeline Service* majority pointed out that in the Court's common fund and common benefit decisions, "the class of beneficiaries was small in number and easily identifiable." *Id.* at 265, 95 S.Ct. at 1625 n. 39. In the present case plaintiffs did not press their claim for attorneys' fees on this rationale undoubtedly because there existed an open-ended group of beneficiaries with no distinct pool of funds created by the litigation which was allocable to the entire class, as opposed to being allocable to the public as a whole, upon which the plaintiffs who prosecuted this suit could draw. *See generally* Mills v. Electric Auto-Lite Co., 396 U.S. 375, 391–97, 90 S.Ct. 616, 24 L.Ed.2d 593 (1970). In this situation the traditional common benefit or fund rationale is inappropriate. *See* Satoskar v. Real Estate Commission, 517 F.2d 696 (7th Cir. 1975).

 Similarly, plaintiffs' claim that they are entitled to attorneys' fees because the defendants have acted in bad faith cannot be maintained. We have examined the record in this case and we cannot say that the decision to defend the state statute and regulation and oppose a retroactive award, or the manner in which defendants handled this litiga-

---

**16.** 42 U.S.C. § 2996f(b)(1) provides that no federal Legal Services Corporation funds may be used "to provide legal assistance with respect to any fee-generating case . . . ." We believe this is intended to preclude the handling of cases where a fee was likely to be paid by a particular client or as the OEO regulations state in "contingent fee cases or other cases in which a fee provided by statute or administrative rule is sufficient to retain an attorney. The test should be whether the client can obtain representation." 2 CCH Poverty L.Rep. ¶ 8700.35 (1974). The possibility that fees would be awarded here does not violate these proscriptions.

tion has been in bad faith such as to justify an award of attorneys' fees.[17]

The judgment in No. 73–1960 (appeal) is reversed insofar as retrospective relief was ordered.

The judgment in No. 73–1961 (cross-appeal) is affirmed.

---

**17.** We decide only that in the issues involved on this appeal there is no merit to plaintiffs' claim for attorneys' fees. We presume that should plaintiffs prove below that the defendants have not complied with the district court's prospective injunction (not an issue here), the district court would consider anew the question of attorneys' fees on a bad faith theory in relation to plaintiffs' efforts to enforce the injunctive relief.