Sharon Lee MEYERS and Phyllis Young, individually and on behalf of their minor children, and all others similarly situated, Plaintiffs,

v.

Andrew JURAS, individually and in his capacity as Administrator of the Oregon Public Welfare Division, Defendant.

Civ. No. 70–378.

United States District Court,
D. Oregon.

May 3, 1971.

Charles J. Merten, Portland, Or., Robert P. Vogel, Denver, Colo., Robert J. Altman, John H. Clough, Douglas S. Green, Legal Aid Service, Portland, Or., for plaintiffs.

Lee Johnson, Atty. Gen., James W. Durham, Jr., and Kathryn Kelty, Asst. Attys. Gen., Salem, Or., for defendant.

Before KILKENNY, Circuit Judge, and SOLOMON and GOODWIN, District Judges.

## OPINION

ALFRED T. GOODWIN, District Judge:

Plaintiffs, public welfare recipients, seek to enjoin the State of Oregon from enforcing a regulation which requires local welfare administrators to terminate aid to families with dependent children if mothers refuse to cooperate with law enforcement officials in obtaining financial support from nonsupporting fathers.

A three-judge court was convened because the plaintiffs seek to enjoin the enforcement of a state regulation. 28 U.S.C. §§ 2281, 2284. Jurisdiction is based on 28 U.S.C. § 1343(3) and (4); 42 U.S.C. § 1983. The three-judge court also has pendent jurisdiction of plaintiffs' claims that the local regulations conflict with federal statutes and regulations. Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); United Mine Workers v. Gibbs, 383 U.S. 715, 721–729, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966).

Plaintiff Sharon Lee Meyers has received AFDC since November 1967. She now refuses to sign a complaint in a state proceeding against her husband. The Welfare Recovery Division has advised Mrs. Meyers that if she fails to sign the complaint her grant will be suspended.

The challenged regulations are found in Oregon Public Welfare Division Staff Manual, §§ 2145.45 and 2114.6 to 2114.-66, as modified by Executive Department Task Force Bulletin #9 (April 1, 1970).

The Social Security Act requires every state to seek contributions from persons legally responsible for the support of children receiving assistance. 42 U.S.C. § 602(a) (11). The requirement is known as NOLEO (Notice to Law Enforcement Officials). The NOLEO program was enlarged in 1968 by the addition to 42 U.S.C. § 602(a) of subsections (17), (18), (21), and (22), 81 Stat. 878, 879, 896, and 897. The federal regulations issued pursuant to these amendments are found in 45 C.F.R. § 220.48.

Oregon's Executive Task Force Bulletin #9 provides:

"*Compliance with the NOLEO procedure is a basic eligibility requirement in all cases in which a child has been deserted or abandoned by a parent* * * *. If the recipient does not agree to comply with the NOLEO procedure and to take whatever affirmative action is necessary to develop the resource of support from the absent parent or after agreeing fails

to comply, *no eligibility exists and assistance must be denied or terminated.*"

Plaintiffs contend (1) that the quoted portion of Bulletin #9 is in conflict with the Social Security Act and that the local regulation violates federally protected constitutional rights.

The state contends that the challenged regulation is consistent with the letter and the intent of the relevant federal legislation, and is constitutional.

If plaintiffs' statutory claim is well taken, we need not reach the constitutional issues. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

The statutory question is whether, under the powers granted the states by the Social Security Act and the regulations of the Department of Health, Education and Welfare, Oregon can make compliance with the state's NOLEO procedures an eligibility requirement for AFDC benefits.

■ The answer turns on the intention of Congress in providing for the NOLEO program. The 1968 amendment to the NOLEO provisions gave the states "additional tools" to determine legal responsibility for support and to make collections. The amendment provided the following kinds of help to the state:

(1) Federal sharing of costs of law enforcement agencies;

(2) Full-time staff in the state welfare agency, to specialize in enforcement of child-support obligations;

(3) Internal Revenue Service master file made available to help locate absent parents;

(4) Information on the location of absent parents released to courts in interstate proceedings under the Uniform Reciprocal Enforcement of Support Act;

(5) State welfare agencies required to assist each other in locating absent parents and collecting support;

(6) Federal tax liability established to the extent of federal contribution to AFDC grant if absent parent does not comply with a court support order; and

(7) Internal Revenue Service reimbursed by Health, Education and Welfare for costs in locating absent parents who do not pay support.

Although the amended statute sets out many methods for obtaining child support from an absent parent, nowhere does it appear that Congress intended the states to develop support resources by threatening mothers and children with the withdrawal of AFDC benefits. Neither the statute nor its legislative history mentions eligibility requirements. See S.Rep.No 744, 90th Cong. 1st Sess. (1967), reprinted in 1967 U.S. Code Cong. and Admin.News, pp. 2834, 2997–3000; Pub.L. 90–248 (1968).

Congressional silence is not always illuminating, but silence is significant here because the same 1968 amendments to the Social Security Act expressly provided that participation in work-incentive programs is an eligibility requirement. The state, in determining the amount of an AFDC grant to a family, may deny benefits to a person who refuses to participate in a work-incentive program. 42 U.S.C. § 602(a) (19). Reading the 1968 amendments as a whole, we conclude that if Congress had intended to make the mother's cooperation in collection efforts an eligibility requirement, the amendment would have said so as it did in connection with refusal to work.

This conclusion is fortified by current federal administrative interpretation of the NOLEO program. After this case was argued, H.E.W. promulgated a new regulation, effective February 27, 1971, which reads:

"(a) The appropriate law enforcement officials will be notified in writing promptly as soon as AFDC has been furnished in respect to a child who is believed to have been deserted or abandoned by a parent. This requirement has no effect upon the determination of eligibility. It is a requirement upon the agency, and is ful-

filled by providing the * * * information after a family has been found eligible and been granted assistance * * *." 45 C.F.R. § 235.70. This is not, as the defendant contends, a new interpretation of the Social Security Act. See H.E.W.'s Handbook of Public Assistance, Part IV, § 8120.

We are also in harmony with Doe v. Shapiro, 302 F.Supp. 761 (D.Conn.1969), and Woods v. Miller, 318 F.Supp. 510 (W.D.Pa.1970). In both of these three-judge cases, local provisions which conditioned welfare eligibility upon NOLEO cooperation were declared invalid as not authorized by Congress.

Defendant argues that Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L. Ed.2d 408 (1971), supports its contention that Oregon's NOLEO program is valid. At least one court has so viewed the *James* case. See Saiz v. Goodwin, 325 F.Supp. 23 (D.N.M., March 5, 1971). However, since we do not reach the constitutional issues in this case, the *James* case is not in point. The Supreme Court in *James* held that compulsory home visits by welfare officials were a "reasonable administrative tool" and did not contravene the Fourth Amendment's proscription against unreasonable searches. 400 U.S. at 326, 91 S.Ct. 381, 27 L.Ed.2d 408. The question presented here, however, ·is not whether cooperation with the NOLEO program might also be a "reasonable administrative tool" for purposes of constitutional analysis, but whether Congress has authorized the use of such a tool.

◼ We are convinced that Congress intended the Public Welfare Division to consider only the income available to the mother and children in determining the amount of the AFDC grant. 45 C.F.R. § 233.20(a) (3) (ii) (c); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L. Ed.2d 561 (1970). The state Public Welfare Division was directed by Congress to secure the mother's cooperation in developing potential income resources, but it was not authorized to terminate an AFDC grant (which is for children) to coerce the cooperation of a mother.

We therefore hold that Oregon's NOLEO regulations are invalid. A state may not impose a condition of eligibility for AFDC benefits unless that condition is authorized by the Social Security Act.

◼ We do not hold that the State of Oregon cannot use its NOLEO program to locate and collect support from absent parents. Neither do we hold that the State of Oregon may not seek the AFDC mother's cooperation through means less drastic than the withdrawal of benefits from her children. We hold only that where federal money is being spent on state-administered welfare, the state may not impose upon the beneficiaries conditions other than those authorized by Congress.

This opinion shall serve as findings of fact and conclusions of law pursuant to Fed.R.Civ.P. 52(a).

The defendant is permanently enjoined from discontinuing or denying AFDC assistance to plaintiffs on the sole ground that plaintiffs have failed to cooperate with law enforcement officials as required by Oregon Public Welfare Division Staff Manual, §§ 2145.45 and 2114.6 to 2114.66 (as modified by Executive Department Task Force Bulletin #9).

KILKENNY, Circuit Judge (dissenting):

In my opinion, the challenged regulation is entirely consistent with, and conforms to, the letter and intent of the relevant federal legislation and is constitutional under the teaching of Wyman v. James, 400 U.S. 309, 91 S.Ct. 381, 27 L. Ed.2d 408 (1971), as applied in Saiz v. Goodwin, 325 F.Supp. 23 (D.N.M., March 5, 1971).