Sandra STORY and Jeanette Simpson, Individually and on behalf of their minor children, and on behalf of all others similarly situated, Plaintiffs,

and

Susie Mae Weems, Individually and on behalf of her minor dependents, and on behalf of all others similarly situated, Intervenors,

v.

Emmett S. ROBERTS, Secretary, Department of Health and Rehabilitative Services, State of Florida, et al., Defendants.

No. 72–641–Civ–J.

United States District Court,
M. D. Florida, Jacksonville Division.

Dec. 20, 1972.

William J. Gibbons and Paul C. Doyle, Duval County Legal Aid Assn., Jacksonville, Fla., for plaintiffs.

Chester G. Senf, Jr., and Robert Horne, Jacksonville, Fla., for defendants.

Before SIMPSON, Circuit Judge, and McRAE and SCOTT, District Judges.

## OPINION AND ORDER

WILLIAM A. McRAE, District Judge:

Plaintiffs and intervenors, public welfare recipients, invoke the jurisdiction of this Court pursuant to 28 U.S.C. § 1343(3) and (4), 42 U.S.C. § 1983, and 28 U.S.C. § 2201, § 2202, § 2281. They institute this class action for declaratory, injunctive and retroactive relief against state welfare officials on the grounds that Fla.Stat. § 409.245 (1971), F.S.A., and state regulations thereunder, violate the Due Process and Equal Protection Clauses of the fourteenth amendment. Plaintiffs and intervenors additionally assert that this Florida Statute is inconsistent with the Social Security Act of 1935, 42 U.S.C. § 601 et seq., and is therefore invalid under the Supremacy Clause.

A temporary restraining order was issued by a single district judge pursuant to 28 U.S.C. § 2284(3), for the purpose of protecting plaintiffs and the class they represent until a three-judge district court could be convened to consider whether this action is one to be decided by a three-judge panel, and if it is, to proceed then to an adjudication on the merits. Subsequent to the issuance of the temporary restraining order, Susie Mae Weems moved to intervene because her benefits were, in fact, terminated solely on account of the statute in question. The motion to intervene was granted, thereby permitting her and all those similarly situated to join in this action.

The initial consideration for the Court is whether a three-judge district court is a proper forum for the disposition of this class action. Since it appears from the complaint that injunctive relief is sought against a state officer from enforcing a state statute on the ground that the statute is unconstitutional, a three-judge district court is re-

quired pursuant to 28 U.S.C. § 2281, § 2284. This clearly is not a situation in which defense of the statute's constitutionality is frivolous. See Bailey v. Patterson, 369 U.S. 31, 82 S.Ct. 549, 7 L. Ed.2d 512 (1962).

In addition to attacking the Florida Statute, and regulations thereunder, on constitutional grounds, plaintiffs and intervenors assert that Fla. Stat. § 409.245, F.S.A., is fatally inconsistent with the federal statutory requirement that "aid shall be promptly furnished to all eligible individuals." 42 U.S.C. § 602(a)(10). Although a three-judge district court is required to determine whether a state statute of general application conflicts with a provision of the United States Constitution, 28 U.S.C. § 2281, a three-judge court is not required to declare a state statute inconsistent with a federal statute and therefore violative of the Supremacy Clause. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). Nevertheless, since the statutory claim and the constitutional claims "derive from a common nucleus of operative fact" and are such that plaintiffs and intervenors "would ordinarily be expected to try them all in one judicial proceeding," this Court considers it appropriate, once having assumed jurisdiction as a three-judge court on the constitutional claims, to maintain jurisdiction over the statutory claim. United Mine Workers v. Gibbs, 383 U.S. 715, 725, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968).

In accordance with a well-settled principle of constitutional law, the Court will proceed to dispose of this case on the statutory claim without reaching the constitutional issues. King v. Smith, *supra, See* e.g. Harmon v. Brucker, 355 U. S. 579, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

Fla.Stat. § 409.245 (1971), F.S.A., and state regulations thereunder, require plaintiffs, intervenor and those similarly situated, in order that they be eligible for Aid for Dependent Children (AFDC) assistance or food stamp benefits, to institute and in good faith prosecute a civil action for support of their dependent children.

Defendants submit that the statute in question is not inconsistent with the Social Security Act of 1935. In support of their contention they point to 45 C.F.R. § 232.20, entitled "Coverage and Conditions of Eligibility in Financial Assistance Programs, Need and Amount of Assistance," which establishes a federal requirement in order for states to be eligible for federal funds. Particularly, § 233.20(a)(3)(ix) provides that the state will "carry out policies with reference to applicants and recipients potential sources of income that can be developed to a state of availability." Defendants argue that Fla.Stat. § 409.245, F.S.A., and regulations thereunder, are merely enacted to satisfy this federal requirement and not for the purpose of creating an additional eligibility requirement for recipients.

The Social Security Act of 1935 clearly provides that a child is eligible for and entitled to AFDC assistance if he is both "dependent" and "needy." 42 U.S.C. § 602 et seq. These are the only eligibility requirements Congress has seen fit to prescribe. Accordingly, any statute or regulation which creates an eligibility standard, even though not intended as such, which excludes persons eligible for assistance under federal AFDC standards, violates the Social Security Act and is therefore invalid under the Supremacy Clause. Townsend et al. v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971); King v. Smith, *supra*. In short, this Court finds no authorization in the Social Security Act for a state to make welfare assistance conditional upon a mother's decision to institute a support action against those persons legally responsible for the support of her dependent children. Fla.Stat. § 409.245, F.S. A., clearly is inconsistent with the

standards set forth in the Social Security Act, and is therefore invalid. Meyers v. Juras, 327 F.Supp. 759 (D.Or.1971), aff'd 404 U.S. 803, 92 S.Ct. 91, 30 L.Ed. 2d 39 (1971), reh. denied 404 U.S. 961, 92 S.Ct. 308, 30 L.Ed.2d 280 (1971); Taylor v. Martin, 330 F.Supp. 85 (N.D. Cal.1971), aff'd 404 U.S. 980, 92 S.Ct. 446, 30 L.Ed.2d 364 (1971); Doe v. Swank, 332 F.Supp. 61 (N.D.Ill.1971), aff'd 404 U.S. 987, 92 S.Ct. 537, 30 L. Ed.2d 539 (1971).

### Retroactive Welfare Benefits

In this class action against the Secretary, Department of Health and Rehabilitative Services, State of Florida, and others, defendants assert that even if Fla.Stat. § 409.245 (1971), F.S.A., and state regulations promulgated thereunder, are found to be fatally inconsistent with the Social Security Act, namely 42 U.S.C. § 602(a)(10), and pertinent regulation thereunder, 45 C.F.R. 235.70 (1971), retroactive payments cannot be awarded because the eleventh amendment * prevents the Court from extending its jurisdiction to suits of this kind. Defendants contend that since retroactive relief would require a substantial expenditure of funds from the Treasury of the State of Florida, the state, therefore, is the real party in interest, and suit against it by one of its citizens cannot be maintained without its consent.

Defendants' position has been adopted in the recent case of Rothstein et al. v. Wyman, 467 F.2d 226 (2nd Cir. 1972), wherein the Second Circuit reversed the district court's decision awarding retroactive welfare benefits from state funds. The ratio decidendi of Rothstein is twofold. First, the court held that the lower court's ruling was an improvident exercise of its general equity jurisdiction when measured by principles of comity, federalism and equity. Second, the circuit court ruled that even if the district

court's equitable remedy of granting retroactive relief had been proper, the eleventh amendment prevents the court from ordering the state to expend withheld benefits even though the court, under the authority of Ex parte Young, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908), can enjoin continued withholding of such benefits.

After a careful examination of the well-reasoned opinion of Rothstein, this Court does not find that case to be controlling in the present action. The court in Rothstein set forth three congressional interests to be furthered by a court in ordering retroactive welfare payments. They are: (1) retroactive payments might aid in deterring willful state violations of federal requirements; (2) federal policy of satisfying ascertained needs of impoverished persons; and (3) federal interest as grantor to oversee that granted funds are used properly.

■ This Court believes that federal welfare interests will be furthered in the instant case without unnecessarily exacerbating federal-state relations. The facts presently before the Court, unlike those present in Rothstein, show first that a state statutory provision similar to the one in question, which imposed an additional eligibility requirement, had been considered invalid by the Department of Health, Education and Welfare (HEW), 45 C.F.R. 235.70 (1971), as early as February 27, 1971. Such a requirement had been judicially declared invalid by the Supreme Court in Meyers v. Juras, supra, as of October 27, 1971. (Thereby indicating that the State of Florida has followed, for substantial length of time, an unlawful course of conduct.) Second, the aggrieved intervenor and all others similarly situated, contested the withholding of welfare benefits within two months from the date of actual termination. Viewing this timely objection to the ter-

---

* The eleventh amendment to the Constitution of the United States provides that "the Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State."

mination of benefits, the awarding of retroactive payments will be remedial and not compensatory, and hence the federal policy of satisfying the ascertained needs of impoverished persons will be furthered.

With these facts in mind, it is clear that the granting of retroactive relief appropriately falls within this Court's general equity jurisdiction.

■ With reference to the proposition that the eleventh amendment precludes the exercise of the Court's equity jurisdiction in ordering retroactive payments, this Court, notwithstanding *Rothstein,* holds that the eleventh amendment presents no barrier. Zarate et al. v. State Department of Health and Rehabilitative Services, 347 F.Supp. 1004 (S.D.Fla.1971) aff'd mem., 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803 (1972) reh. denied, 409 U.S. 903, 93 S.Ct. 107, 34 L.Ed.2d 166 (1972). *See* McDonald v. The Department of Public Welfare of the State of Florida, 430 F.2d 1268 (5th Cir.1970).

The three-judge district court in *Zarate, supra,* held in effect that the awarding of retroactive benefits was an appropriate part of the court's injunctive order, and therefore consistent with the doctrine of Ex Parte Young. This decision was appealed directly to the Supreme Court pursuant to 28 U.S.C. § 1253. The only issue on appeal was the propriety of court-ordered retroactive payments in light of the eleventh amendment. The Supreme Court affirmed the three-judge district court in a memorandum opinion; and accordingly by this action, the High Court intimated that the eleventh amendment is no bar to federal courts awarding retroactive welfare benefits. Although this action by the Supreme Court is not a specific or comprehensive pronouncement of the law in this area, the Court's memorandum opinion does suggest approval of such retroactive relief.

In addition, a three-judge district court, Thompson v. Shapiro, 270 F.Supp. 331, 338 (D.Conn.1967), awarded "mon-

ies unconstitutionally withheld" to plaintiffs as part of the court's relief, and the eleventh amendment was seen as no barrier to such relief. The district court was affirmed on appeal by the Supreme Court. 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969). *See* Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969), aff'd sub nom., Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38 (1970).

Furthermore, in *McDonald, supra,* the Fifth Circuit held that the district court's decision invalidating a durational residency requirement was retroactive; and a welfare recipient who had been denied assistance because of the requirement was entitled to benefits unlawfully withheld. *See* Machado v. Hackney, 299 F.Supp. 644 (W.D.Tex.1969) (three-judge district court awarding retroactive payments to plaintiffs when Supreme Court found state regulation inconsistent with Social Security Act). *Accord,* Harkless v. Sweeny Independent School District, 427 F.2d 319 (5th Cir. 1970) cert. denied, 400 U.S. 991, 91 S.Ct. 451, 27 L.Ed.2d 439 (1971) (award of back pay to wrongfully dismissed school teacher as an integral part of the equitable remedy of injunctive reinstatement). *See* e.g., Alexander and Townsend v. Weaver, 345 F.Supp. 666 (N.D. Ill.1972); Doe v. Swank, *supra,* (retroactive relief awarded).

The decision of Westberry v. Fisher, 309 F.Supp. 12 (D.Maine 1970) (eleventh amendment is a bar to the awarding of retroactive welfare benefits) relied on by defendants and the Second Circuit in *Rothstein,* is in conflict with the weight of authority as evidenced by *Zarate,* Shapiro v. Thompson, and the Fifth Circuit's holding in *McDonald.*

It is, accordingly,

Ordered and adjudged:

1. Fla.Stat. § 409.245 (1971), F.S.A., and state regulations thereunder, are inconsistent with the Social Security Act, 42 U.S.C. § 601 et seq., and hereby declared invalid under the Supremacy

Clause of the United States Constitution.

2. Defendants are hereby permanently enjoined from implementing Fla.Stat. § 409.245 (1971), F.S.A., and state regulations thereunder.

3. Intervenor, and all others similarly situated, who have been denied public welfare benefits solely on account of Fla.Stat. § 409.245 (1971), F.S.A., and state regulations thereunder, shall be entitled, if otherwise eligible, to retroactive benefits. Those persons now eligible shall be notified of their eligibility and tendered benefits unlawfully withheld within sixty (60) days.

SIMPSON, Circuit Judge (concurring in part and dissenting in part):

I concur fully in the majority's holding that the Social Security Act does not authorize a state to condition welfare assistance payments upon a mother's institution of a support action against those persons legally responsible for the support of her dependent children, as the Florida Legislature has attempted by Florida Stat., Section 409.245 (1971), F.S.A., and regulations thereunder. But as to the majority's award of retroactive welfare benefits I respectfully dissent. Although the question has its troublesome aspects, I think that the better view is that the award by a federal court of such benefits in retrospect is proscribed by the Eleventh Amendment to the U. S. Constitution.

It is helpful as a starting point to examine briefly the background against which the Eleventh Amendment came into being. In Chisholm v. Georgia, 1793, 2 U.S. (2 Dall.) 419, 1 L.Ed. 440, the Supreme Court required the State of Georgia to be an unwilling defendant in an action brought by South Carolina citizens as executors of the estate of a former Georgian for payment due on bonds the decedent had received from debtors who had thereafter had their property confiscated by Georgia. This holding contradicted what some Federalists of the time, The Federalist, No. 81

(Hamilton), had represented as the meaning of the judicial power of the federal court as delineated in U.S.Const. Art. III, Section 2. The foreseeable effect of the decision would be to stimulate similar actions against other financially insecure states, presenting grave dangers to their finances; Mathis, The Eleventh Amendment, 2 Ga.L.Rev. 207, 224–230, 1968. The prompt adoption of the Eleventh Amendment by the states, 1794–1798, followed as an unmistakable and direct reaction to that threat:

"The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S.Const. Amend. XI.

Clearly, "(t)o suits against a State, without her consent, brought by citizens of another State . . . the Eleventh Amendment erected an absolute bar". Monaco v. Mississippi, 1934, 292 U.S. 313, 329, 54 S.Ct. 745, 750–751, 78 L.Ed. 1282, 1287. Further, the Eleventh Amendment is now uniformly interpreted to apply to suits against a state by its own citizens. Hans v. Louisiana, 1890, 134 U.S. 1, 14–15, 10 S.Ct. 504, 507, 33 L.Ed. 842, 847.

In our case the State of Florida is patently the actual party to the performance of the retroactive benefits sought. It is the only party under obligation to make the payments. Once we enjoin the defendant state officials from relying on Section 409.245 in the future, as individuals, they have no personal interest in the subject matter of the suit and defend only as representing the State. Payment of the retroactive benefits prayed for could only be by the State from State funds. The situation is analogous to that in Sundry African Slaves v. Madrazo, 1828, 26 U.S. (1 Pet.) 110, 7 L.Ed. 73. There the Court, as to a claim against the Governor of Georgia as governor, where the demand was made upon him, not personally but officially, for money in the Treasury of the

State and for slaves in the possession of the state government, held Georgia should be considered as the party on the record. The suit was held not maintainable under the ban of the Eleventh Amendment.

The authorities relied upon by the majority in support of the award of retroactive payments I find unpersuasive. I think we should align ourselves with the position taked by the Second Circuit in Rothstein v. Wyman, 1972, 467 F.2d 226, Part III, page 236.

I read Ex parte Young, 1908, 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714, as standing simply for the proposition that a suit to restrain threatened unconstitutional action by an individual who is a state officer is not to be deemed a suit against the state. See 209 U.S. at 159–160, 28 S.Ct. at 453–454. Ex parte Young is distinguishable in the present circumstances first of all because we do not reach the constitutional question raised. Further, the majority here entertains a request going far beyond restraint of a state official. As noted, the demand is upon Florida's treasury.

In Zarate et al. v. State Department of Health and Rehabilitative Services, S.D.Fla.1971, 347 F.Supp. 1004, aff'd mem. 1972, 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803, relied upon by the majority, Florida was found to violate the Equal Protection Clause of the Fourteenth Amendment by conditioning welfare benefits either upon the beneficiary's possession of U. S. citizenship or upon the alien beneficiary's residence in the United States for a certain number of years. Similarly, retroactive benefits were granted in *McDonald*,[1] *Shapiro*,[2]

*Gaddis*,[3] and *Harkless*[4] after *constitutional* infirmities were found to exist.

It is true that in Machado v. Hackney, W.D.Tex.1969, 299 F.Supp. 644, the court granted retroactive benefits where the Texas welfare statute involved was merely found to be inconsistent with the Social Security Act. However, the *Machado* court relied on King v. Smith, 1968, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118, which in turn did not mention this issue of retroactive payments, and offered no authority for granting such payments. The *Alexander*[5] court did not refer to the Eleventh Amendment, discussing instead only the general issue of retroactive application of judicial decisions not involving a state as an unwilling defendant.

Finally, in *Doe*[6] although the majority of the divided district court, 332 F.Supp. at 64, instructed the defendant state official to compute the amount wrongfully withheld from each of the individual plaintiffs denied aid and to remit such amounts to them, it did not discuss the effect of the Eleventh Amendment upon the granting of such relief. It is of course impossible to tell from the cryptic "judgment affirmed" language of the memorandum decision of the Supreme Court whether or not this problem was before the Court at all. Its lack of discussion in either of the district court opinions is some indication at least that the Supreme Court was not presented with it.

Without clearer precedent I am not disposed further to strip from the Eleventh Amendment its historic meaning by requiring retroactive payments from the State's Treasury absent a finding of constitutional violation. Cf. Rothstein

1. McDonald v. The Department of Public Welfare of the State of Florida, 5 Cir. 1970, 430 F.2d 1268.

2. Thompson v. Shapiro, D.Conn.1967, 270 F.Supp. 331.

3. Gaddis v. Wyman, S.D.N.Y.1969, 304 F.Supp. 717, aff'd sub nom., Wyman v. Bowens, 1970, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed.2d 38.

4. Harkless v. Sweeny Independent School District, 5 Cir. 1970, 427 F.2d 319, cert. denied 1970, 400 U.S. 991, 91 S.Ct. 451, 227 L.Ed.2d 439.

5. Alexander and Townsend v. Weaver, N.D. Ill.1972, 345 F.Supp. 666.

6. Doe v. Swank, N.D.Ill.1971, 332 F.Supp. 61, aff'd mem. sub nom. Weaver v. Doe, 1971, 404 U.S. 987, 92 S.Ct. 537, 30 L.Ed. 2d 539.

v. Wyman, supra. I conclude with the Second Circuit in *Rothstein v. Wyman* that:

". . . the Eleventh Amendment stands in the way. It is for (Florida), and not for the federal courts, to decide what policy is to be followed with respect to retroactive payments in the circumstances of this record." 467 F.2d 241–242.