**Alice Eileen SILVEY, Individually, and on behalf of all others similarly situated, Plaintiffs,**

**v.**

**Emmett S. ROBERTS, Secretary, Department of Health and Rehabilitative Services, State of Florida, et al., Defendants.**

**No. 72–915–Civ–J.**

United States District Court,
M. D. Florida,
Jacksonville Division.

Aug. 8, 1973.

---

Alan A. Alop, Steven M. Goldstein, Duval County Legal Aid Assn., Jacksonville, Fla., for plaintiffs.

Chester G. Senf, Jacksonville, Fla., for defendants.

ORDER AND OPINION

CHARLES R. SCOTT, District Judge.

This case presents three basic issues: (1) whether a state welfare agency's termination or reduction of Medicaid assistance for prescribed medicine prior to notice and an opportunity to be heard violates the Social Security Act of 1935, as amended, and the federal regulations promulgated thereunder; (2) whether the said reduction prior to notice and an opportunity to be heard violates the Due Process Clause of the Fourteenth Amendment; and (3) assuming said reduction prior to notice and an opportuni-

ty to be heard is held to be aberrant, whether the class of plaintiffs in this case is entitled to retroactive benefits. Since this Court holds that the defendants' policy of reducing excess prescribed medicine grants under Medicaid without the benefit of prior notice and an opportunity to be heard is clearly inconsistent with the Social Security Act and the federal regulations promulgated pursuant thereto under 42 U.S.C. § 1302, the issue is as to whether said practice violates the Due Process Clause is pretermitted. As to the third issue, this Court holds that retroactive benefits should be made available to the class of plaintiffs herein.

## I. FACTUAL BACKGROUND

In the State of Florida, all public assistance recipients are entitled to receive a monthly grant for prescribed medicine under the Medicaid program up to a general maximum of twenty dollars ($20.00) per month.[1] In a "serious and complicated situation such as when additional medicine is necessary for the prolongation of life itself", grants in excess of the general $20.00 maximum are provided for.[2]

The uncontroverted facts surrounding the unilateral reduction of the Medicaid excess medicine grant of the named plaintiff is set forth below. The named

plaintiff, Alice Eileen Silvey, is a 55 year old unmarried woman. She has had no income or resources other than the welfare benefits received under the Aid to the Disabled Program since January 1972. Plaintiff is afflicted with rheumatoid arthritis, rheumatoid vasculitis, peripheral neuropathy, and a heart condition. She is presently confined to bed at St. Jude Manor Nursing Home, Jacksonville, Florida. On January 27, 1972, the Bureau of Medical Service, Division of Family Services, Department of Health and Rehabilitative Services, pursuant to operations letter 1775[3] of the Medicaid State Plan and Chapter 504.1[4] of the Medical Services Bureau Medicaid Manual, granted the named plaintiff a monthly allotment of $70.00 for prescribed medicine. This grant was effective January 1, 1972, and was based on information provided to the Bureau of Medical Services by Louis M. Sales, M. D., plaintiff's physician.

On or about April 1972, Doctor Sales requested the Bureau of Medical Services to increase plaintiff's monthly prescribed medicine grant because the amount plaintiff was then receiving was insufficient to purchase all her necessary prescribed medication. On April 18, 1972, the Bureau of Medical Services denied this request and, in addition, for

---

1. This allowance provides for the purchase of prescribed "legend" drugs, a legend drug being defined as a drug which can be purchased only by the prescription of a doctor and which is not available over the counter. When a doctor prescribes a drug for a welfare recipient, the recipient takes the drug allowance voucher which he receives each month to a druggist who is a participant in the Medicaid program. The recipient may then charge up to twenty dollars ($20.00) of prescribed legend drugs each month. The druggist forwards the charges to the Division of Family Services which in turn pays directly to the druggist (labelled as the "provider"). No direct payment is made to the recipient.

2. Section 504.1 of the Medical Services Bureau Medicaid Manual provides as follows:

Excess grants, in addition to the monthly $20.00 allowed, can be made by the Medical Consultant of the Bureau of Medical Services, *only in the most serious and complicated situations such as when additional medicine is necessary for the prolongation of life itself.* Each request should be carefully screened before issuing a PM–5 to the attending physician. (emphasis added)

3. The pertinent portion of Operations Letter #1775 provides as follows:
VI Drugs
Provision of Case—A maximum payment of $20.00 per case with a medical exception in some of the more difficult cases.

4. See note 3.

some unknown reason, *reduced* the monthly medicine allotment from $70.00 to $35.00, effective April 1, 1972. This reduction was effected upon the unilateral decision of Edward Morrow, M. D., the medical consultant employed by the Bureau of Medical Services, on the basis of Sections 504.2 [5] and 504.3 [6] of the Medical Services Bureau Medicaid Manual (hereinafter referred to as "Regs. 504.2 and 504.3"). The named plaintiff was concededly given no opportunity, prior to the reduction, to be heard on the question of whether her benefits should be reduced and was given no notice whatsoever that the Bureau of Medical Services was contemplating such an action. In addition, at the time Miss Silvey's physician submitted the request for an increase in benefits, plaintiff had no knowledge that this request would paradoxically result in a reduction of benefits.

On August 24, 1972, Doctor Morrow, the medical consultant of the Bureau of Medical Services, once again considered the monthly medicine grant of the plaintiff in the course of deciding a second request for an increase in monthly benefits submitted by the plaintiff's physician, Doctor Sales. As a result, Doctor Morrow further reduced the plaintiff's prescribed medicine grant from $35.00 per month to the general maximum of $20.00 per month without affording the plaintiff prior notice or an opportunity to be heard by an impartial tribunal. This reduction was effective October 1, 1972. The plaintiff was and is without funds to personally purchase the medicines which her physician prescribed as necessary for her health and even her existence.[7]

Without conceding the improvidence of their actions, the defendants, pursuant to a stipulation,[8] filed herein April

---

5. Section 504.2 provides as follows:
   Requests for excess grants can be initiated by having the attending physician complete a form PM–5, and forward the form to the Bureau of Medical Services. PM–5s are not to be issued to persons other than the attending physician. Upon receipt, the Medical Consultant will make a determination as to the amount of the excess grant, or if the request is to be denied. Payment for excess grants can commence only during the month approval is made. Approval for retroactive excess grants cannot be made. In cases where a previous excess grant has been approved and another PM–5 submitted, a denial of the second request by the Medical Consultant will reduce the allowable monthly amount to $20.00. Supplemental PM–1s for excess grants should never be issued for an amount greater than that is shown on video. If it is believed that a client is entitled to an amount greater than is shown on video, verification should be made with the Pharmaceutical Section of the Bureau of Medical Services before the PM–1 is issued.

6. Section 504.3 provides as follows:
   Quarterly reviews of excess grants will be conducted. If the review reveals underutilization the grant will be reduced, or if indicated revest to the

normal allowance of $20.00 per month per case.
   If it is believed that a recipient is entitled to an excess grant, and the PM–1 issued indicates $20.00, a supplemental PM–1 in excess of the amount indicated on video is not to be issued until authorization is obtained from the Bureau of Medical Services.

7. As her counsel pointed out, the plaintiff was indeed more fortunate than other members of the class which she represents, in that a personal friend, Mrs. Eileen Murrell, personally intervened in Miss Silvey's behalf in order to purchase the necessary drugs after the state reduced the medicine grant without any legal obligation on her part to do so. Certainly, in such a case, a person's very means of existence should not be required to depend on the adventitious charity of one's friends.

8. The stipulation, which was filed in lieu of this Court's considering plaintiffs' application for preliminary injunctive relief, provided in pertinent part as follows:
   Defendants agree that no Florida public assistance recipient who is receiving or may receive monthly Medicaid allotments for prescribed medicine will have said allotment reduced or terminated prior to fifteen days advance notice of such proposed action and a hearing on the propriety of such action. If a time-

4, 1973, have agreed to provide notice and an opportunity to be heard prior to any reduction of Medicaid medicine grants in the future and that this lawsuit may be maintained as a class action.[9]

The jurisdictional basis for this action is 28 U.S.C. § 1343(3) and 42 U.S.C. § 1983.[10] Relief is sought pursuant to 28 U.S.C. §§ 2201 and 2202 and 42 U.S.C. § 1983. The specific relief requested is: (1) a declaratory judgment that the actions of the defendants in reducing the Medicaid medicine payments without prior notice and a hearing were inconsistent with the Social Security Act of 1935, as amended, and violative of the Due Process Clause of the Fourteenth Amendment; (2) a permanent injunction enjoining the defendants and their agents, employees, successors, and all those acting in concert with them from reducing or terminating the monthly level of Medicaid payments for prescribed medicine to Florida public assistance recipients without prior notice and a hearing pursuant to Regs. 504.2 and 504.3; and (3) an award of retroactive benefits to the plaintiffs.

As pointed out above, this Court pretermits any decision as to the merits of plaintiffs' claim that the defendants' actions herein were violative of due process. This Court does hold that the defendants' practice of reduction or termination of Medicaid grants for prescribed medicine as embodied in Regs. 504.2 and 504.3 of the Medical Services Bureau Medicaid Manual is inconsistent with 42 U.S.C. § 1382(a)(4) and 45 C.F.R. § 205.10 (1972) and that the defendants must be permanently enjoined therefrom. This Court also holds that benefits must be accorded to all members of the class retroactive to the effective date of 45 C.F.R. § 205.10, April 14, 1971.

## II.  THREE–JUDGE COURT UNNECESSARY

Before this Court can reach the merits of plaintiffs' claim, the threshhold issue of whether a three-judge court should be convoked to decide the case must perforce be disposed of.

■■ At the hearing on the plaintiffs' application for preliminary injunction on April 4, 1973, the parties orally stipulated that a three-judge court, pursuant to 28 U.S.C. § 2281, was unnecessary to the disposition of this case. As the plaintiffs point out, there are two main reasons why a three-judge court is not called for here. First of all, a three-judge court is not required to declare a state statute (or other legislation of statewide application as is involved in this case) inconsistent with a federal statute and, therefore, violative of the Supremacy Clause. Swift & Co. v. Wickham, 382 U.S. 111, 86 S.Ct. 258, 15 L.Ed.2d 194 (1965). See also Rosado v. Wyman, 397 U.S. 397, 402, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970). Since this Court feels that the instant case is easily disposed of on the basis of federal-state statutory inconsistency without reaching the constitu-

ly request for a hearing is made by the recipient, their personal assistance level shall continue until a decision is rendered by the hearings officer.

9. The class consists of all Florida public assistance recipients who are receiving or may receive monthly Medicaid grants for prescribed medicine in excess of the $20.00 state drug allowance and who have had or may have had said grant reduced or terminated without prior notice and a hearing.

10. The defendants never challenged this jurisdictional basis. Jurisdiction under 28 U.S.C. § 1343(3) has been upheld in Almenares v. Wyman, 453 F.2d 1075, 1081–1082 (2d Cir. 1971), cert. denied 405 U.S. 944, 92 S.Ct. 962, 30 L.Ed.2d 815 (1972), and has been assumed sub silentio by the Supreme Court in numerous welfare cases. See, e. g., Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Dandridge v. Williams, 397 U.S. 471, 90 S.Ct. 1153, 25 L.Ed.2d 491 (1970); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed. 2d 561 (1970); See also Story v. Roberts, 352 F.Supp. 473 (M.D.Fla.1972).

tional question, Swift & Co. v. Wickham, *supra,* clearly precludes the necessity of a three-judge court. The second reason for not convening a three-judge court is that the plaintiffs are not attacking the constitutionality of the regulations themselves but rather their application within the context of procedural due process.[11] *See* Phillips v. United States, 312 U.S. 246, 61 S.Ct. 480, 85 L.Ed. 800 (1941); Spencer v. Kugler, 454 F.2d 839 (3d Cir. 1972); Almenares v. Wyman, 453 F.2d 1075 (2d Cir. 1971), cert. denied 405 U.S. 944, 92 S.Ct. 962, 30 L. Ed.2d 815 (1972); Bussie v. Long, 383 F.2d 766 (5th Cir. 1967); Benoit v. Gardner, 351 F.2d 846 (1st Cir. 1965); Serritella v. Engelman, 339 F.Supp. 738 (D.N.J.1972); Hunt v. Edmunds, 328 F.Supp. 468 (D.Minn.1971).

III. CONFLICT WITH THE SO-CIAL SECURITY ACT AND THE REGULATIONS PROMULGATED THEREUNDER

The "fair hearings" requirement of the Social Security Act of 1935, as amended, 42 U.S.C. §§ 301 et seq., is expressed in at least three distinct locations. For example, 42 U.S.C. § 1382 (1968) provides in pertinent part as follows:

(a) A State plan for aid to the aged, blind, or disabled, or for aid to the aged, blind, or disabled and medical assistance to the aged, must—

(4) provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for aid or assistance under the plan is denied or is not acted upon with reasonable promptness.[12]

To the same effect for A.F.D.C. programs is 42 U.S.C. § 602(a)(4) and for aid to the blind programs is 42 U.S.C. § 1202(a)(4).

The rule-making provision of the Act, 42 U.S.C. § 1302 [13], provides the authority for the "fair hearings" requirement of 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971), which was announced on February 13, 1971, to go into effect April 14, 1971. The pertinent portion of this provisions is as follows:

.   .   .   .   .   .

(2) Every claimant will be informed in writing at the time of application and at the time of any action affecting his claim:

(i) *Of his right to a fair hearing;*

(ii) Of the method by which he may obtain a hearing;

.   .   .   .   .   .

(3) An opportunity for a fair hearing before the State Agency will be granted to any individual requesting a hearing because his claim for financial or *medical assistance* is denied, or is not acted upon with reasonable promptness, or because he is aggrieved by any other Agency action affecting receipt, suspension, *reduction,* or *termination* of such assistance or by Agency policy as it effects his situation. . . . (emphasis added)

(5)(iii)(a) In cases in which there is a request for a fair hearing within the advance notice period:

(1) Assistance is continued until the fair hearing decision is rendered

.   .   .   .   .   .

(13) When the hearing decision is favorable to the claimant, or when the

---

11. This is so because the Division of Family Services itself, in its Assistance Payments Manual, Chapter 100, p. 11, provides a right to a hearing generally prior to any reduction or cancellation of assistance with provision for continuation of assistance pending a decision in certain delineated cases.

12. Subsection (a)(4) was amended only slightly on October 30, 1972.

13. 42 U.S.C. § 1302 provides as follows: The Secretary of the Treasury, the Secretary of Labor, and the Secretary of Health, Education, and Welfare, respectively, shall make and publish such rules and regulations, not inconsistent with this chapter, as may be necessary to the efficient administration of the functions with which each is charged under this chapter.

agency decides in favor of the claimant prior to the hearing, the agency will make *corrective payments retroactively to the date the incorrect action was taken* or such earlier date as is provided under state policy. (emphasis added)

It should be pointed out here that the validity of this fair hearings regulation has been sustained in Almenares v. Wyman, 453 F.2d 1075 (2d Cir. 1971), cert. denied 405 U.S. 944, 92 S.Ct. 962, 30 L. Ed.2d 815 (1972). *See also* Serritella v. Engelman, 339 F.Supp. 738 (D.N.J. 1972), aff'd 462 F.2d 601 (3d Cir. 1972).

The defendants assert, however, that this fair hearings regulation does not apply to excess medicine grants since they are "not part of the assistance package normally available as a matter of right to the recipient" and they are granted only in "the most serious and complicated situations such as when additional medicine is necessary for the prolongation of life itself". Such an argument is unmeritorious in the extreme. It is patently obvious to this Court that notice and an opportunity to be heard is infinitely more appropriate where the public assistance about to be terminated or reduced provides the immediate means of preserving the recipient's life. Nowhere is the "brutal need" referred to in Goldberg v. Kelly, 397 U.S. 254, 261, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970), more apparent than in the instant case where the medicine provided constitutes, by definition, the sole means by which the recipient can be kept alive

in the absence of gratuitous assistance from family or friends. To allow the slender thread of life to be severed by possible arbitrary bureaucratic action would be manifestly unconscionable.

■ Therefore, this Court concludes that the defendants' policy of terminating or reducing excess medicine grants without prior notice and a hearing is fatally inconsistent with the "fair hearings" requirements of the Social Security Act and 45 C.F.R. § 205.10, 36 Fed. Reg. 3034 (1971), and must, therefore, be permanently enjoined on the basis of the Supremacy Clause.[14] King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Rosado v. Wyman, 397 U.S. 397, 90 S.Ct. 1207, 25 L.Ed.2d 442 (1970); Lewis v. Martin, 397 U.S. 552, 90 S.Ct. 1282, 25 L.Ed.2d 561 (1970); Almenares v. Wyman, *supra*; Story v. Roberts, 352 F.Supp. 473 (M.D.Fla. 1972); Townsend v. Swank, 404 U.S. 282, 92 S.Ct. 502, 30 L.Ed.2d 448 (1971).

Although this Court need not and does not reach the constitutional claim presented herein [15], the constitutionality of defendants' policy of not providing prior notice and a hearing is certainly open to grave doubt. Goldberg v. Kelly, *supra*; Sniadach v. Family Finance, 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed.2d 349 (1969); Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 (1971); Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.2d 556 (1972); Merriweather v. Burson, 439 F.2d 1092 (5th Cir. 1971); Lage v. Downing, 314 F. Supp. 903 (S.D.Iowa 1970); Hunt v.

14. The defendants, at page 5 of their memorandum, filed herein June 15, 1973, seem to have conceded that their policy was in contravention of the "fair hearings" requirement of the Social Security Act and the regulations thereunder. The defendants' argument that the quarterly computer printout review of the underutilization of the medicine grant which results in termination or reduction is a mere "bookkeeping" procedure since the grant was not utilized underscores the impersonal means by which the recipient's grant is affected and is patently without merit. The possibility for computer error,

as is demonstrated by the case *sub judice*, with its attendant potentially drastic consequences, further emphasizes the necessity for some sort of check on arbitrary action.

15. This disposition of the case on the basis of the statutory claim without reaching the constitutional issues is in accordance with a well-settled principle of constitutional law. King v. Smith, 392 U.S. 309, 88 S.Ct. 2128, 20 L.Ed.2d 1118 (1968); Harmon v. Brucker, 355 U.S. 579, 581, 78 S.Ct. 433, 2 L.Ed.2d 503 (1958).

Edmunds, 328 F.Supp. 468 (D.Minn. 1971); Caldwell v. Laupheimer, 311 F. Supp. 853 (E.D.Pa.1969); Barnett v. Lindsay, 319 F.Supp. 610 (D.Utah, 1970).

### IV. RETROACTIVE BENEFITS

In determining whether the defendant state officials should be ordered to make retroactive payment of the federal-state welfare funds which were wrongfully withheld in this case, this Court must resolve two primary issues. The first issue is whether the Eleventh Amendment bars federal jurisdiction over the portion of this lawsuit which seeks to force the defendants, as state officials, to make retroactive payment of the welfare funds which were wrongfully withheld.[16] Assuming the first issue is resolved in the negative, the second issue is whether the equities favor such a retroactive award *vel non.*

As to the Eleventh Amendment issue, this Court is assisted by two cases which assumed diametrically opposed positions on the question. In one case, Rothstein v. Wyman, 467 F.2d 226 (2d Cir. 1972), the Second Circuit Court of Appeals held that the Eleventh Amendment did prohibit such an award, in the absence of consent by the state involved. The other case, Jordan v. Weaver, 472 F.2d 985 (7th Cir. 1973), which was decided by the Seventh Circuit Court of Appeals, held that the Eleventh Amendment was no bar to an award of retroactive benefits and that, even if it was, the state had constructively consented to such a suit. This Court is inclined to follow *Jordan* rather than *Rothstein* for the reasons enunciated below.

The first reason is that, as pointed out in *Jordan, supra,* at 989, in four separate three-judge court decisions which rejected the identical Eleventh Amendment argument advanced in *Jordan* and *Rothstein,* appeals were taken to the Supreme Court specifically raising the point. The Supreme Court affirmed in each case without discussing the issue. Sterrett v. Mothers & Childrens Rights Organization, 409 U.S. 809, 93 S.Ct. 68, 34 L.Ed.2d 70 (1972), affirming unreported order and judgment, Civil No. 70 F. 138 (N.D.Ind. April 14, 1972) on remand from Carpenter v. Sterrett, 405 U.S. 971, 92 S.Ct. 1199, 31 L.Ed.2d 246; State Dept. of Health and Rehabilitative Services v. Zarate, 407 U.S. 918, 92 S.Ct. 2462, 32 L.Ed.2d 803; summarily affirming Zarate v. State Dept. of Health and Rehabilitative Services, 347 F.Supp. 1004 (S.D.Fla.1971); Wyman v. Bowens, 397 U.S. 49, 90 S.Ct. 813, 25 L.Ed. 2d 38, aff'g per curiam, Gaddis v. Wyman, 304 F.Supp. 717 (S.D.N.Y.1969); Shapiro v. Thompson, 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969), aff'g 270 F.Supp. 331 (D.Conn.1967).

The *Jordan* court held that although two of the affirmances were summary and the other two very similar in effect, the summary affirmances were decisions on the merits having precedential value.[17] 472 F.2d at 989. This Court agrees.

In addition, the *Jordan* court embarked upon an independent determination that the *Ex Parte Young*[18] doctrine authorized an award of retroactive welfare benefits which were wrongfully retained, an analysis which this Court finds persuasive. 472 F.2d at 992–994.

---

16. It should be pointed out that the defendants have never raised the Eleventh Amendment question but only seek to attack the issue of retroactive benefits on the basis of the equities involved in this case. However, this Court feels compelled to discuss the question at least briefly.

17. The cases cited in *Jordan* as authority for this proposition were Cincinnati, New Orleans, & Texas Pacific Ry. Co. v. United States, 400 U.S. 932, 935, 91 S.Ct. 235, 27 L.Ed.2d 240 (Justice White dissenting from the summary affirmance); Barton v. Sentner, 353 U.S. 963, 77 S.Ct. 1047, 1 L.Ed.2d 901 (Justices Burton and Clark dissenting from the summary affirmance). Stern and Gressman, Supreme Court Practice 197 (4th ed. 1969) was also cited.

18. 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908). In that case, the Supreme Court held that a state official who seeks to enforce state law which conflicts with paramount federal law may be enjoined therefrom even though the state is the real party in interest.

The gist of that court's discussion was that *Ex Parte Young* does not limit a federal court's jurisdiction over a state official to mere prospective relief in the form of a preventive injunction but that "where appropriate to deal with defiance of federal law, a federal court's equitable intervention may take an effective form".[19] 472 F.2d at 991. Logically, it does seem true that an injunction which requires an increase in future state expenditures would not place any greater burden on the state treasury than an award of retroactive state expenditures which should have been disbursed in the first place.[20] In any event, this Court concludes that the Eleventh Amendment does not create a bar to the retroactive relief requested herein. Story v. Roberts, *supra*; McDonald v. Dept. of Public Welfare of State of Fla., 430 F.2d 1268 (5th Cir. 1970). Therefore, this Court need not decide the second bone of contention raised between *Rothstein* and *Jordan, i. e.*, even if the Eleventh Amendment does proscribe an award of retroactive benefits, whether a state, by its participation in a federally funded welfare program, waives its immunity to such a recovery. *See* Rothstein v. Wyman, *supra*, 467 F.2d at 238; Jordan v. Weaver[21], *supra*, 472 F.2d at 994; Parden v. Terminal Ry. of Ala. State Docks Dept., 377 U.S. 184, 84 S.Ct. 1207, 12 L. Ed.2d 233 (1964).[22]

It should also be pointed out here that granting retroactive benefits in this case would not constitute a "raid" solely on the state treasury since the "fair hearings" regulation provides for retroactive payments to be made out of federal participating funds where "corrective payments" are necessary. 45 C. F.R. § 205.10(a)(13) and (b)(1)(2)(3) (1972).[23]

## V. THE MERITS OF RETROACTIVE RELIEF

Court-ordered retroactive payments were thought by the *Rothstein* court to potentially serve three congressional interests: (1) to deter wilful state violations of federal requirements; (2) to promote the federal policy of sat-

---

19. Citing Dept. of Employment v. United States, 385 U.S. 355, 87 S.Ct. 464, 17 L.Ed.2d 414 (1966). But *Cf.* Kennecott Copper Corp. v. State Tax Comm'n, 327 U.S. 573, 66 S.Ct. 745, 90 L.Ed. 862 (1946); Ford Motor Co. v. Dept. of Treasury, 323 U.S. 459, 65 S.Ct. 347, 89 L.Ed. 389 (1945); Great Northern Life Ins. Co. v. Read, 322 U.S. 47, 64 S.Ct. 873, 88 L.Ed. 1121 (1944). The Court in Jordan distinguished between an award of "damages" and restitutional relief. 472 F.2d at 992–994.

20. See Note, 7 Ga.L.Rev. 366, 377 (Winter 1973).

21. "By participating in the federal AABD plan, thereby agreeing to comply with federal statutes and regulations, and by receiving federal funds thereunder, Illinois surely left 'the sphere that is exclusively its own and enter[ed] into activities subject to congressional regulation . . .'" 472 F.2d at 995.

22. In *Parden*, the Supreme Court held that Alabama's operation of a railroad 20 years after implementation of the Federal Employers Liability Act constituted a waiver of immunity in suits arising under that statute.

23. 45 C.F.R. § 205.10(a)(13) provides as follows:

When the hearing decision is favorable to the claimant, or when the agency decides in favor of the claimant prior to the hearing, *the agency will make corrective payments retroactively to the date the incorrect action was taken or such earlier date as is provided under State policy.* (emphasis added)

45 C.F.R. § 205.10(b)(1)(2) & (3) provides as follows:

(b) *Federal Financial Participation.* Federal financial participation is available for the following items:

(1) Payments of assistance continued pending a hearing decision;

(2) Payments of assistance made to carry out hearing decisions, or to take corrective action after an appeal but prior to hearing, or to extend the benefit of a hearing decision *or court order to others in the same situation as those directly affected by the decision or order.* Such payments may be made *retroactive* in accordance with applicable Federal policies on corrective payments.

(3) Payments of assistance within the scope of Federally aided public assistance programs *in accordance with a court order.* (emphasis added)

isfying the ascertained needs of impoverished persons; and (3) as grantor, to insure proper use of federal funds. 467 F.2d at 234–235. This Court finds that all three congressional purposes are fulfilled by awarding retroactive payments in this case.

First of all, the defendants' policy of not granting notice and a hearing prior to termination and reduction of excess medicine grants was a patent violation of the "fair hearings" regulation which was published on February 13, 1971, and which went into effect as of April 14, 1971. The defendants were at least grossly negligent in not complying therewith. Granting retroactive benefits in this case will serve to deter the defendants from engaging in similar violations in the future.[24] The second congressional interest, that of promoting the federal policy of satisfying the needs of impoverished persons, will be fulfilled since only those members of the class who were forced to incur expenses for payment of needed medicine as a result of the unlawful actions of the defendants will be granted retroactive payments. Third, the congressional interest of insuring that federal funds are used properly is obviously satisfied since they were wrongfully withheld in the first place as to the named plaintiff at least and probably as to many of the other members of the class as well. Therefore, this Court finds that the equities of the situation dictate that retroactive payments are appropriate in this particular case. *See* Story v. Roberts, *supra*, 352 F.Supp. at 476–477.

Since the H.E.W. "fair hearings" regulation went into effect on April 14, 1971, the defendants are directed to provide benefits retroactive to that date.[25] In addition, the retroactive benefits shall be tendered directly to the affected recipients rather than to the participating druggist since the affected recipients themselves were forced to incur the expenses for the medicines.

Therefore, it is

Ordered:

1. The defendants' policy of terminating or reducing Medicaid medicine grants pursuant to Sections 504.1–504.3 of the Medicaid Services Bureau Medicaid Manual without prior notice and a hearing is hereby declared to be inconsistent with the Social Security Act, as amended, 42 U.S.C. § 301 et seq., and the H.E.W. "fair hearings" regulation promulgated thereunder, 45 C.F.R. § 205.10, 36 Fed.Reg. 3034 (1971), and is, therefore, declared invalid under the Supremacy Clause of the United States Constitution.

2. Defendants are hereby permanently enjoined from engaging in the practice of terminating or reducing Medicaid medicine grants without affording prior notice and a hearing under the requirements as set forth in the Social Security Act and 45 C.F.R. § 205.10 and 36 Fed. Reg. 3034 (1971).

3. All plaintiffs, whose Medicaid prescribed medicine grants have been terminated or reduced without prior notice and a hearing since April 14, 1971, shall be entitled, if otherwise eligible, for retroactive benefits.

24. As pointed out in Alexander and Townsend v. Weaver, 345 F.Supp. 666, 673 (N.D.Ill.1972):

> To permit this reliance [state's self-serving interpretation of the Social Security Act] as a defense against retroactive payments would allow any state to promulgate a statute of dubious constitutionality limiting the funds it must expend at the minimal risk of a subsequent finding of unconstitutionality (if indeed it was challenged) which finding would come only some time later after the case had gone the judicial route and which would deny retroactive relief thus giving the state the desired effect and savings at least during the period of its existence.

25. The defendants' contention that if retroactive payments are to be made, only those plaintiffs who objected to the lack of prior notice and a hearing, should be accorded retroactive benefits is utterly without merit since the plaintiffs were never informed they had such a right.

4. The defendants are required to inform all plaintiffs whose Medicaid prescribed medicine grants were reduced or terminated unlawfully on or after April 14, 1971, that the reduction or termination was unlawful and that they can request a hearing to determine whether their grant should have been reduced or terminated. These plaintiffs shall be informed that they will be reimbursed by the defendants for expenditures for prescribed Medicaid medicines which would not have been incurred but for the unlawful actions of the defendants, if they can present proof of their expenditures.

5. Said reimbursement shall be effected within 120 days from the date of this order.

6. This Court retains jurisdiction of this case pending the furnishing to this Court of written assurances under oath by the defendants or their successors within 150 days from the date of this order that said reimbursement has been accomplished as directed by this order.

7. All costs in this action are hereby taxed against the defendants.